In the

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

23-2594

SHARON A. FINIZIE

*Appellant*,

vs.

DENIS MCDONOUGH, SECRETARY, U.S. DEPARTMENT OF VETERANS AFFAIRS

*Appellee.*

*On Appeal from the United States District Court for the Eastern District of Pennsylvania's Order dated August 9, 2023 entered by Judge Kearney in Case No.: 23-294*

## BRIEF FOR APPELLANT

Faye Riva Cohen, Esquire
Law Office of Faye Riva Cohen, P.C.
2047 Locust Street
P: 215-563-7776
F: 215-563-9996

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS................................................................... i

TABLE OF CITATIONS ................................................................ iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION .......................................................... 1

STATEMENT OF ISSUES ............................................................... 1

STATEMENT OF RELATED CASES AND PROCEEDINGS .................... 2

STATEMENT OF THE CASE............................................................ 2

    A. Summary of Relevant Facts.................................................... 2

        1.  Administrative Board of Investigation Investigation ........................ 2

        2.  Non-Selection Issues ......................................................... 8

    B. Procedural History and Rulings Presented for Review .......................... 11

STATEMENT OF STANDARD OF REVIEW ............................................. 12

    A. Summary Judgment ............................................................ 12

    B. Discrimination ................................................................. 14

SUMMARY OF THE ARGUMENT ..................................................... 16

ARGUMENT ............................................................................ 17

    A. AIB Investigation............................................................. 17

    B. Non-Selection Issues ......................................................... 19

    C. Appellee Discriminated against Appellant
       Due to Her Prior EEO Activity................................................ 22

i

CONCLUSION ................................................................................. 23

COMBINED CERTIFICATIONS ..................................................... 25

APPENDIX VOL. 1 .......................................................................... 27

# **TABLE OF CITATIONS**

**Page**

**Cases:**

*Adickes v. S. H. Kress & Co.*,
398 U.S. 144 (1970).............................................................. 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......................................................... 12, 13

*Armbruster v. Unisys Corp.*,
32 F.3d 768 (3d Cir. 1994)................................................. 14

*Brickhouse v. Spring-Ford Area Sch. Dist.*,
656 A.2d 483 (Pa. 1995) .................................................... 19

*Bush v. Fordham Univ.*, 452 F. Supp. 2d 394 (S.D.N.Y. 2006)
452 F. Supp. 2d 394 (S.D.N.Y. 2006) ............................... 19

*Cardenas v. Massey,*
269 F.3d 251 (3d Cir. 2001)............................................... 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).......................................................... 13

*Cridland v. Kmart Corp.*,
929 F. Supp. 2d 377 (E.D. Pa. 2013) ................................ 13

*Davis v. Brown*,
Appeal No. 01941843 (1995) ............................................ 14

*E.E.O.C. v. Concrete Applied Constr. Techs. Corp.*,
511 F. Supp. 2d 334 (W.D.NY, 2007)............................... 19

*Fuentes v. Perskie,*
32 F. 3d 759 (3d Cir. 1994)................................................ 15

*Gelover v. Lockheed Martin*,
971 F. Supp. 180 (E.D. Pa. 1997) ..................................... 14

*Giles v. Kearney,*
571 F.3d 318 (3d Cir. 2009) .............................................................. 12

*Harmon v. Runyon,*
Appeal No. 01963903 (1996) .......................................................... 16

*Iadimarco v. Runyon,*
190 F.3d 151 (3d Cir. 1999) .............................................................. 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) .......................................................................... 13

*Lanier v. I.B.M. Corp.,*
319 F. Supp. 2d 374 (S.D.NY 2004) ................................................ 19

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ..................................................................... 14, 15

*Meredith v. Ashcroft,*
Appeal No. 01A14290 (2002) .......................................................... 16

*Merrell v. Chartiers Valley Sch. Dist.,*
955 A.2d 713 (Pa. 2004) ................................................................... 19

*Pignataro v. Port Auth. of N.Y. & N.J.,*
596 F.3d 265 (3d Cir. 2010) ............................................................. 14

*Plotkin v. Pacific Tel. & Tel. Co.,*
688 F.2d 1291 (9th Cir.1982) ............................................................. 1

*Saldana v. Kmart Corp.,*
260 F.3d 228 (3d Cir. 2001) ............................................................. 14

*Siegel Transfer, Inc. v. Carrier Express, Inc.,*
54 F.3d 1125 (3d Cir. 1995) ............................................................. 13

*Simens v. Reno,*
Appeal No. 01941293 (1996) .......................................................... 16

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.*,
142 F.3d 639 (3d Cir.1998)................................................................. 15

*Tomasso v. Boeing Co.*,
445 F.3d 702 (3d Cir. 2006)............................................................... 15

*Trafficante v. Metropolitan Life Ins. Co.*,
409 U.S. 205 (1972)........................................................................... 16

*United States v. 107.9 Acre Parcel of Land in Warren Twp.*,
898 F.2d 396 (3d Cir. 1990)............................................................... 14

**Statutes and Rules:**

28 U.S.C. § 1291 ................................................................................. 1

38 U.S.C. § 7401 ................................................................................. 9

42 U.S.C. § 2000e-16(c) .................................................................... 12

29 C.F.R. Part 1614............................................................................ 11

Fed. R. Civ. P. 56 ............................................................................... 12

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

Appellant Sharon Finizie [hereinafter "Appellant"] appeals the August 9, 2023 Order of the United States District Court for the Eastern District of Pennsylvania granting Appellee Denis McDonough, Secretary, United States Department of Veterans Affairs' [hereinafter "Appellee"] Motion for Summary Judgment and dismissing Appellant's claims. The District Court had jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-16(c), which provides, in pertinent part, that a federal employee may obtain judicial review and a trial *de novo* in a federal district court from a judicially reviewable action where Title VII discrimination has been alleged. This Honorable Court has appellate jurisdiction under 28 U.S.C. § 1291, because the matter is an appeal from a final decision of the District Court. *See, e.g., Plotkin v. Pacific Tel. & Tel. Co.*, 688 F.2d 1291, 1292 (9th Cir. 1982).

## STATEMENT OF ISSUES

Did the District Court err in granting Appellee's Motion for Summary Judgment and dismissing Appellant's claims of discrimination on the basis of age, gender, and prior Equal Employment Opportunity Commission [hereinafter "EEOC]" activity. (See A045–54, A055–78, and A079–99).

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The instant proceeding has not been before this Honorable Court previously, and the Appellant is not aware of any other case or proceeding that is in any way related, completed, pending, or about to be presented to this Honorable Court or any other court or agency, state or federal.

## STATEMENT OF THE CASE

**A.    Summary of Relevant Facts**

At all times noted herein, Appellant (DOB: May 14, 2023, female) was a registered nurse employed by Appellee. (See A047).

### 1.    Administrative Board of Investigation Investigation

On October 5, 2016, Appellant and one of her coworkers, Florence Kocher [hereinafter "Kocher"], made a complaint to Robert LaPointe [hereinafter "LaPointe"], Interim Director of the Quality Management Department, regarding an incident with serious workplace safety implications. (See A218–221). That morning, Kocher was verbally attacked by her coworker, Administrative Officer for Quality Management Patricia Simon [hereinafter "Simon"]. When Kocher asked Simon about the status of a report that was due, Simon responded erratically, screaming multiple expletives at Kocher and gesticulating wildly. (See A218–221). Appellant, who was sitting nearby, witnessed this incident. (See A218–221). Given Simon's shocking behavior, Appellant took contemporaneous notes that

documented the incident. (See A0222). Before this incident, neither Appellant nor Kocher had any interactions outside of the workplace.

Several hours later, Kocher and Appellant met with LaPointe. Kocher and Appellant told LaPointe about that morning's events to alert him to the possible safety implications of Simon's behavior and the creation of a hostile workplace. At LaPointe's direction, Kocher and Appellant co-wrote and submitted a statement that documented Simon's behavior. (See A218–221).

Shortly afterwards, Kocher and Appellant were involved in two other incidents that had serious workplace safety implications and which evidenced acts of workplace harassment. On October 17, 2016, Appellant was approached by Patient Safety Manager Peter Leporati [hereinafter "Leporati"]. At the time this occurred, Appellant had a good working relationship with Leporati. Leporati told Appellant a crude sex joke and massaged her shoulders, without her consent. (See A225–228). Then, only two days later, on October 19, 2016, Kocher was delivering work-related papers to LaPointe. While in LaPointe's office, Kocher saw Leporati standing outside of the office doorway, approximately three feet away. Leporati made eye-contact with Kocher, and pantomimed firing a gun at her with both of his fingers. Since Leporati had a police and military background, Kocher fled LaPointe's office, shocked and afraid for her safety. (See A259–260). Due to the incidents occurring within days of each other involving employees who

did not have a history of hostile workplace relationships, Appellant and Kocher

requested that an investigation be conducted. This led to the Administrative Board

of Investigation [hereinafter "AIB"] Panel being selected to conduct an

investigation. AIB investigations are a systematic process for gathering evidence

and ascertaining facts about matters of significant interest to the Department of

Veterans' Affairs and are conducted to determine what happened and why it

happened so that any individual and systemic deficiencies can be identified and

correct (See A258).

In or about February 2017, the Medical Center Director, Daniel Hendee,

initiated an AIB investigation based on allegations of inappropriate workplace

behavior made by Appellant and another Quality Management staff member (*i.e.*

Kocher). (See A100–105). AIB investigations are to be conducted in accordance

with official Agency written policies; as described below, Appellant avers that the

AIB investigation did not comply with the applicable policies pursuant to the VHA

Handbook. (See A172–184). The aforesaid allegations included workplace

violence issues and issues of sexual harassment. (See A100). Appellant had

extensive prior Equal Employment Opportunity [hereinafter "EEO"] activity, some

of which were in active litigation status at the time the AIB investigation was held.

(See A120, 124, and 131).

The AIB investigation was a sham investigation, both procedurally and

substantively, and designed to unfairly target Appellant for alleged wrongdoing based directly on Appellant's prior EEO activity. Specifically, the AIB panel members engaged in improper communications with witnesses, and those improper communications were not documented in the AIB Report. Appellant and Kocher both furnished a large number of documents and testified during the AIB investigation; however these documents were not noted or included in the AIB report. (See A101–105). There were at least 100 different documents not noted or included in the AIB report.

While the AIB panel members investigated matters of alleged wrongdoing against Appellant, she was never informed of the allegations against her, and never given an opportunity to address or challenge those allegations—a clear violation of Appellant's due process rights. Neither the charge letter for this matter nor the notice of the same informed Appellant of the allegations against her. (See A100 and 206–213). The Agency never produced the full, complete, and unredacted copy of the AIB report; nor did the Agency ever produce the requisite documents comprising the AIB report; furthermore, neither Appellant nor Kocher were afforded the opportunity to respond to, and challenge, the conclusions, findings and recommendations of the AIB report.

The documents that were not produced (referred to above) include, but are not limited to, email communications during the course of the AIB investigation.

The aforesaid email communications would show that non-AIB members were apprised of evidence, directed the focus of the investigation, and improperly prepared portions of the AIB report. The aforesaid documents that were not produced also included essential documents that had been submitted during the course of the AIB investigation, an analysis of the material facts in contention, and evidence that the AIB members apprised Appellant of allegations upon which the AIB members reached conclusions which were critical of Appellant's conduct. (See A214–217).

At the time of the AIB investigation, Appellant had extensive prior EEO activity, all of which involved her attempts to regain the position of infection control nurse, a position which she had occupied at the Medical Center from approximately February 1981 through May 1993. Appellant alleges that she never received an opportunity to appeal from the loss of that position, and alleged that reasons for her removal were not supported or investigated.

It was only after the AIB completed its investigation, and despite her being one of the complaining parties along with Kocher, that Appellant learned that she and Kocher were the target of the AIB investigation. She learned that she was deliberately not informed or apprised of the allegations that were being investigated and that Appellee used the AIB investigation to blame Appellant and Kocher for the Quality Management employee misconduct that they had reported

to Appellee.

On April 27, 2017, Boxer informed Appellant that the AIB investigative report contained negative findings against her. (See A126–127 and 191–196). On April 27, 2017, Boxer met with and told Appellant that (1) she engaged in collusion with an older female colleague (Kocher); (2) she and her colleague (Kocher) exhibited unprofessional behavior and complicit behavior; (3) the AIB panel concluded that Appellant was one of the "wrongdoers," and that appropriate severe actions must be taken against her; (4) Appellant was threatened with progressive discipline; and, (5) Appellant was required to meet with Boxer on a frequent basis to discuss Appellant's progress. (See A191–196, 240–242, 244, and 256).

On April 27, 2017, Boxer ordered Appellant to move to a smaller, partially enclosed office space, that was not located in Appellant's respective product line, but, instead, was located immediately adjacent to the office space of a male staff member who Appellant alleged had physically assaulted her on October 17, 2016. (See A106, 128, and 191–196). Appellant was only given one working day's notice by Boxer to immediately move to a shelf and chair located in the main Quality Management office space. Appellant's previous office was semi-private with a door that could be closed and a standard size desk and office chair. There was very little working space available on this shelf in the new office space once Appellant's

computer with accessories and telephone were placed on it; indeed, Appellant was unable to get up from her chair without banging into the chair of a co-worker seated behind her.

On April 27, 2018, Boxer issued to Appellant an overdue and lowered Proficiency Report and Competency Assessment in the Performance Evaluation for June 2016 – June 2017 which Appellant seeks to have rescinded. (See A136–143, 185, and 197).

### 2.    Non-Selection Issues

On June 16, 2017, Appellant applied for the position of Registered Nurse – Infection Control, Vacancy Identification Number: 1968021, Announcement Number: PHL-17-020-SMH-1968021-BU, dated June 6, 2017. (See A107). The vacancy announcement was open from Tuesday, June 6, 2017 to Tuesday, June 20, 2017. (See A108). Appellant has maintained National Certification in Infection Control for many years, worked with the Infection Preventionists by gathering data on special projects, and routinely analyzed data; and, upon Appellant's information and belief, she was the only in-house applicant fully qualified to perform the duties of the position, as described in the vacancy announcement.

On or about July 5, 2017, Appellant was notified that she was not selected for the position of Registered Nurse-Infection Control, Funder Vacancy Identification No. 1994947, Announcement No. PHL-17-043-SMH-1994947-BU,

dated June 6, 2017. (See A107 and 130). The Agency, after Appellant applied, chose not to fill the position under said vacancy announcement. (See A107 and 130). The above position was initially offered to Jenny Hayes, RN, a woman in her 30's who did not have an MSN degree, but Appellant is unclear as to whether she accepted the position. (See A118 and 123–124).

On August 8, 2017, Appellant applied for the position of Registered Nurse-Infection Control, under Vacancy Identification No. 1994947, Announcement No. PHL-17-043-SMH- 1994947-BU, dated August 3, 2017. (See A107). The vacancy announcement was open from Tuesday, August 3, 2017 to Thursday, August 17, 2017. (See A109–116).

Appellant was notified, by email, that she was not selected because she, allegedly, did not meet the qualification requirements for the position. The above position was offered to Mary Fornek, RN, a woman in her 40's, but, as above, Appellant is unclear as to whether she accepted the position. (See A117–118 and 134).

Appellant was a Title 38 employee (physicians, registered nurses, dentists, etc., see 38 U.S.C. § 7401) and she was a member of the American Federation of Government Employees [hereinafter "AFGE"] union at the Medical Center. Pursuant to the AFGE's Master Agreement, Article 23(8)(B), "[p]rior to considering candidates from outside the bargaining unit, the Department agrees to

first consider internal candidates for selection." (See A167–169 and 171).

Appellant was not given the benefit of Article 23(8)(B) despite being clearly

qualified for the positions she applied to described above, as she was passed over

for both of them despite being a qualified internal candidate from within the

bargaining unit. Pursuant to the Master Agreement, Article 61 - Title 38, Vacancy

Announcements, under Section 4 - Title 38 Position Qualifications, at C.,

"[c]urrent employees will receive first consideration when filling position

vacancies." (See A162, 167–168, and 170–171). Appellant was not given the

benefit of Article 61(4)(C) despite being clearly qualified for the two positions

described above, as she was passed over for both of them despite being a fully

qualified internal candidate from within the bargaining unit. (See A167–168 and

170–171). Appellant was not interviewed for either of the above positions.

The Agency created artificial qualification standards in each vacancy

announcement which were designed to specifically exclude Appellant from

competition, when those restrictive standards were contrary to the principles of

merit selection. Boxer was the selecting official for both of the vacancy

announcements described above, while Philomena Rego [hereinafter "Rego"] (a

health systems specialist in Appellee's quality management department) prepared

the certificate of eligibles for both vacancy announcements.

**B.**     **Procedural History and Rulings Presented for Review**

On June 16, 2017, Appellant filed a formal complaint of discrimination against Appellee in which she alleged that she had been discriminated against on the basis of her gender and age and in reprisal for her prior EEO Activity (See A047) when she was ordered to move to a smaller office space per the above-described AIB investigation. (See A049). The administrative identifiers for this formal complaint [hereinafter "First Complaint"] are EEOC No. 530-2018-00125X and Agency Case No. 200H-0624-2017103115. (See A047).

On November 24, 2017, Appellant filed a second formal complaint of discrimination against Appellee, in which she alleged that she had been she had been discriminated against on the basis of her gender and age and in reprisal for her prior EEO activity due to her non-selection for two positions as described more thoroughly above. (See A047). The administrative identifiers for this formal complaint [hereinafter "Second Complaint"] are EEOC No. 530-2018-002625X and Agency Case No. 200H-0624-2017104727. (See A047).

Appellee filed a motion for summary judgment, which the EEOC granted, dismissing the First Complaint and Second Complaint. Appellant then exercised her administrative appeal / review rights, pursuant 29 C.F.R. Part 1614. (See A015) The EEOC denied Appellant's appeal and reconsideration request in a decision dated September 29, 2020. (See A047).

Appellant brought a Complaint against Appellee in the Eastern District of Pennsylvania pursuant to 42 U.S.C. § 2000e-16(c) seeking judicial review and a trial *de novo* of the EEOC decisions. (See A046).

Appellee filed a motion for summary judgment on or about July 18, 2023 and Appellant filed her response on or about July 13, 2022. (See A045). On August 9, 2023, the Court issued an Order and Judgment granting Appellee's Motion for Summary Judgment and entering Judgment in favor of Appellee and against Appellant. (See A023) Appellant timely filed her Notice of Appeal on August 31, 2023. (See A001)

## STATEMENT OF STANDARD OF REVIEW

**A.     Summary Judgment**

The District Court committed an abuse of discretion, and reversible error, when it granted Appellee's Motion for Summary Judgment. An appellate court's review of a grant of summary judgment is plenary, with the appellate court applying the same test that the direct court used in determining whether summary judgment was proper. *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 384 (E.D. Pa. 2013) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248). In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A genuine issue is established if a reasonable jury could return a verdict for the non-moving party based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. In ruling on motions for summary judgment, courts must determine "the range of permissible conclusions that might be drawn" from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986).

A party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the aspects of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the party makes this initial showing, the burden shifts to the non-moving party to demonstrate that there

is a genuine issue of material fact. *United States v. 107.9 Acre Parcel of Land in Warren Twp.*, 898 F.2d 396, 398 (3d Cir. 1990). In meeting its burden, the non-moving party is entitled to all reasonable inferences in its favor. *Pignataro v. Port Auth. of N.Y. & N.J.*, 596 F.3d 265, 268 (3d Cir. 2010). Indeed, in determining the existence of a genuine issue as to any material fact, the "court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court must resolve all doubts as to whether a genuine issue of material fact exists in the non-moving party's favor. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). "If reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted." *Gelover v. Lockheed Martin*, 971 F. Supp. 180, 181 (E.D.Pa.1997).

## B.    Discrimination

In cases sounding in discrimination, the complainant bears the initial burden of demonstrating a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of discrimination based on sex or age, the complainant must establish that she is in the protected group(s) and was treated less favorably than other similarly situated employees outside her protected groups. *Davis v. Brown*, Appeal No. 01941843 (1995). Once the complainant meets this requirement, the burden then shifts to the

employer to articulate "some legitimate, nondiscriminatory reason for the" employer's (in)actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802. If the employer satisfies this burden, the burden then returns to the complainant to show that the employer's stated reason for the adverse employment (in)action is pretext. *Id* at 804. In a pretext analysis for summary judgment purposes, when an employer has articulated a legitimate, nondiscriminatory reason for its action, a complainant may submit either direct or circumstantial evidence, "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir.1998) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). The complainant "need not always offer evidence sufficient to discredit all of the rationales advanced by the employer" because "the rejection of some explanations may so undermine the employer's credibility as to enable a rational factfinder to disbelieve the remaining rationales, even where the employee fails to produce evidence particular to those rationales." *Tomasso v. Boeing Co.*, 445 F.3d 702, 707 (3d Cir. 2006). Additionally, "if the [complainant] has pointed to evidence sufficient[ ] to discredit the Appellee's proffered reasons, to survive summary judgment the [complainant] need not also come forward with additional evidence of discrimination beyond his

15

or her *prima facie* case*" Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999)

(*quoting Fuentes v. Perskie*, 32 F.3d at 764).

To establish a *prima facie* case of reprisal, the complainant must show that:

(1) she engaged in Title VII protected activity; (2) the agency was aware of her

protected activity; (3) subsequently, she was subjected to adverse treatment by the

agency; and, (4) the adverse treatment occurred within such a period of time and in

such a manner that reprisal motivation may be inferred. "The causal connection

[between the protected activity and the adverse action] may be shown by evidence

that the adverse action followed the protected activity within such a period of time

and in such a manner that a reprisal motive is inferred." *Simens v. Reno*, Appeal

No. 01941293 (1996).

Additionally, to be actionable under Title VII, a complainant must state a

claim in which she suffered from an adverse employment action. An adverse

employment action is an action in which an employee suffers a present harm or

loss with respect to a term, condition, or privilege of employment for which there is

a remedy. *Meredith v. Ashcroft*, Appeal No. 01A14290 (2002); *Harmon v. Runyon*,

Appeal No. 01963903 (1996) (*citing Trafficante v. Metropolitan Life Ins. Co.*, 409

U.S. 205 (1972)); *see Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001).

## SUMMARY OF THE ARGUMENT

Appellant has demonstrated below that the District Court's entry of

summary judgment in favor of Appellee should be reversed because genuine issues of material fact exist; therefore, the District Court committed an abuse of discretion, and reversible error, when it granted Appellee's Motion for Summary Judgment. Accordingly, Appellant requests that the Third Circuit remand this matter to the District Court so that it can be heard on its merits.

## **ARGUMENT**

### A.    **AIB Investigation**

The AIB failed to document its investigative activities and did not consider over 100 critical documents provided by Appellant during the investigation, nor did it consider the over 100 pages of materials, as well as a police report, provided by Kocher. (See A199–205, 234–236, and 239). Indeed, none of the documents supplied by Kocher were ultimately included in the AIB record or findings, despite their relevance to the investigation. (See A237). In contrast to Appellant and Kocher's documents mentioned above, Leporati's EEO Complaint and Hostile Work Environment Complaint were included in the AIB record, despite neither being relevant to the AIB investigation, and for the only apparent purpose of prejudicing the AIB Panel against Appellant. (See A238 and 241). The AIB simply did not consider all evidence made available to it. (See A239).

The AIB denied Appellant her fundamental due process rights by reaching conclusions and making findings against her without her being apprised of the

allegations against her, and without giving her the opportunity to address those allegations during the course of the investigation. The AIB Report that followed the above-described investigation (See A101–105) was used by Appellee's management to develop recommendations and an Action Plan to address the conclusions and findings identified in the AIB Report. The Action Plan was prepared by Ariel Drobnes, Boxer, Tierney Stanley [hereinafter "Stanley"], and others. (See A186–188 and 189–190).

Stanley, who is currently serving as Appellee's human relations strategic business partner (See A248–249), indicated that the AIB process in which Appellant was involved was rather unusual. First, her involvement in Appellant's AIB matter was unusual as a human relations employee does not typically get involved in an AIB process. (See A250–251). Stanley recommended that—at worst—the discipline to be meted out against Appellant should be "very low" and "like a reprimand or admonishment or something" which "can be removed from the file within six months." (See A251). The discipline recommended by Stanley was far less punitive than what Boxer ultimately imposed on Appellant, including relocation to a much smaller workspace and being required to attend frequent meetings with him. (See A106, 128, and 196). Indeed, despite Stanley's suggestion that the discipline may be removed within six months, Boxer was still taking disciplinary action over a year after the AIB process. (See A245). Adding

disciplinary infractions into someone's performance evaluations is inappropriate (See A252–253). Despite this, however, the AIB Process was, indeed, included in Appellant's Proficiency Report. Appx. at pg. 300, 301. Consistent with the above, Kocher noted that the discipline meted out to Appellant became intertwined with performance evaluations. (See A242). Kocher also noted that similarly situated employees of Appellee did not receive discipline similar to that imposed on Appellant. (See A218–222, 243, and 246).

For the reasons stated above, due to Appellant's extensive prior EEO activity, the investigation was not objective, and the AIB Panel violated the mandates of VA Handbook 0700 by failing to engage in an analysis of conflicting or disputed evidence to determine the facts or resolve issues, as required by VA Handbook 0700.

**B.    Non-Selection Issues**

It is undisputed hornbook law that the job qualifications for an employment position cannot be established in bad faith to exclude a category of people. *E.E.O.C. v. Concrete Applied Constr. Techs. Corp.*, 511 F. Supp. 2d 334 (W.D.NY, 2007); *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394 (S.D.N.Y. 2006); *Lanier v. I.B.M. Corp.*, 319 F. Supp. 2d 374 (S.D.NY 2004); *Merrell v. Chartiers Valley Sch. Dist.*, 955 A.2d 713 (Pa. 2004); *Brickhouse v. Spring-Ford Area Sch. Dist.*, 656 A.2d 483 (Pa. 1995). Appellant avers in the instant matter, that the

qualifications for the positions for which she applied were established in an

arbitrary and capricious manner for the purpose of excluding her from

consideration.

The deposition of Tracey Schoen [hereinafter "Schoen"], who was directly

involved in not selecting Appellant for the two similar prior vacancies (not at issue

herein) described above, demonstrates that Appellee's hiring criteria for these two

positions was entirely arbitrary, in bad faith, and excluded Appellant as a result.

Schoen testified that she never received any particular training for workplace

harassment or workplace retaliation at or before the period in which she was

involved in the selection process for Appellee. (See A145). Demonstrating the

arbitrary nature of how vacancies are posted by Appellee, Brian Gainsley—who

has served as Appellee's Interim Quality Management Director—testified that

while vacancy announcements use the term "preferred" (to keep the criteria

flexible), hiring without the "preferred" qualifications is not unknown. (See A163–

164). Appellee's disregard of its own standards and practices is common as Schoen

conceded that she questioned the use of Appellee's own proficiency reports, which

is its standard procedure, and did not have faith in them. (See A133 and 147). She

expressed similar concerns and thoughts regarding Appellee's competency

assessment plans. (See A148). As will be mentioned below, these proficiency

reports can have a significant effect on an employee's record with Appellee. (See

A160–161).

Appellant met all the basic and preferred qualifications for the positions. In both the first and second vacancy processes, Appellant did not "receive first consideration," a mandatory requirement under the controlling Master Agreement between Appellee and AFGE. (See A167–172). Indeed, Rego, who was directly involved in the two non-selections at issue here (See A255) did not even know that the Master Agreement applied to Appellant, much less properly applied it as described above. (See A256–257).

The Master Agreement was in effect at all material times (See A150) and Appellee is obliged to comply with its terms. (See A151). One of the main purposes of the Master Agreement sections cited above is to ensure Appellee promotes from within (See A152). Appellee's failure to interview Appellant for either vacancy was, itself, contrary to the requirements of the Master Agreement. (See A155). Qualified union members—such as Appellant (See A158–159), were to be given first priority (See A154 and 156–157); however, Appellant was not given this benefit as she was not even granted an interview.

By virtue of the CBA alone, Appellant should have been given greater consideration for the positions for which she applied as she is a candidate who was a member of the bargaining unit covered by the Master Agreement (See A167– 171), and her membership should have been known by the Human Resources

department. (See A153). Pursuant to the Master Agreement, Article 23(8)(B),

"[p]rior to considering candidates from outside the bargaining unit, the Department

agrees to first consider internal candidates for selection." (See A169). Appellant

was not given the benefit of Article 23(8)(B) despite being clearly qualified for the

positions described above, as she was passed over for both despite being a

qualified internal candidate from within the bargaining unit. (See A169). Despite

the requirements of the Master Agreement—as described above—Appellant never

received the first consideration to which she was entitled.

**C.** **Appellee Discriminated against Appellant Due to Her Prior EEO Activity**

Unlawful discrimination against Appellant is the only explanation for how

Appellant has been treated by Appellee. It should be noted that Kocher affirms that

discrimination against older women is rampant at Appellee's facility and highlights

her own experience as a victim of discrimination as an older woman, as well as

that of another colleague who worked for Appellee, Karen Clinkscales, during

approximately the same timeframe as Appellant's issues raised in the instant

matter. (See A165).

Appellee's Motion for Summary Judgment reveals the fact that Appellee is

well aware and intimately familiar with Appellant's prior EEO activity. As a result,

it is logical to conclude that Appellant's EEO history was well-known by the

individuals who were involved in Appellant's non-selection for the subject

positions. Accordingly, the record contains ample material evidence, not discredited by Appellee as being objectively untrue, supporting Appellant's claim that her well-known and recent prior EEO activity was a motivating factor in Appellee's decision not to select her. Indeed, LaPointe went as far as to say that Appellant "is kind of famous" and that you could learn about her if "you… Google her name." (See A224).

LaPointe's testimony about Appellant's so-called "fame" for filing with the EEO was corroborated by Kocher when she described others with Appellee— notably Boxer and Kocher's former director Susan Blake—as having knowledge of Appellant's EEO activity. (See A230–232 and 243). Significantly, Boxer maintained a large chalk board in his office with the names of some of Appellees' employees on it, including Appellant, whose name also contained a notation "EEO" next to it. (See A233).

## <u>CONCLUSION</u>

For the reasons set forth above, Appellant respectfully requests this Honorable Court to reverse the ruling of the United States District Court for the Eastern District of Pennsylvania and permit Appellant's Complaint to proceed.

Respectfully submitted,


/s/ Faye Riva Cohen
Faye Riva Cohen, Esquire
Attorney for Appellant


Date: November 9, 2023

## <u>COMBINED CERTIFICATION</u>

- **BAR MEMBERSHIP**

I, Faye Riva Cohen, Esquire, hereby certify that I am licensed to practice

law in Pennsylvania and the United States Court of Appeals for the Third Circuit

Court.

- **WORD COUNT**

I, Faye Riva Cohen, Esquire, hereby certify the total number of words in the

instant Brief is 5,351 according to the Microsoft Word wordcount function.

- **SERVICE**

I, Faye Riva Cohen, Esquire, hereby certify that on the date listed below, my

Brief for Appellant and Appendix were filed electronically and are available for

viewing and downloading from the Court's Electronic Case Filing System by ECF

filers. I further certify that copies of the forgoing Brief and Appendix were served

electronically upon the following via the Court's Notice of Docket Activity:

Colin M. Cherico, Esquire
Assistant United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, 12th Floor
Philadelphia, PA 19106

- **IDENTICAL COMPLIANCE**

I, Faye Riva Cohen, Esquire, hereby certify that the hardcopy of the instant

Brief, and the e-filed .pdf version of the same, are identical.

- **VIRUS CHECK**

I, Faye Riva Cohen, Esquire, hereby certify that the e-filed .pdf version of the instant Brief was been scanned with AVG Anti-Virus and does not have a virus.


/s/ Faye Riva Cohen
Faye Riva Cohen, Esquire
Attorney for Appellant


Date: November 9, 2023

## **APPENDIX VOLUME 1**
## **TABLE OF CONTENTS**

**Page**

NOTICE OF APPEAL ..................................................................................... A001

ORDER ........................................................................................................... A023

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARON A. FINIZIE, | : | |
| | : | |
| *Plaintiff*, | : | Civil Action |
| | : | |
| v. | : | No.  23-294 |
| | : | |
| DENIS MCDONOUGH, Secretary, | : | |
| U.S. Department Veterans Affairs, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |

## <u>NOTICE OF APPEAL</u>

NOTICE is hereby given that Plaintiff Sharon Finizie, above named, hereby appeals to

the UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, from the ORDER

entered in the above matter on the 9th day of August, 2023, by the Honorable Mark A. Kearney.

The ORDER and MEMORANDUM from which the instant appeal is taken are attached hereto

and incorporated herein as Exhibit "A".


Respectfully submitted,


/s/ Faye Riva Cohen, Esq.
FAYE RIVA COHEN, ESQUIRE
LAW OFFICE OF FAYE RIVA COHEN, P.C.
Attorney for Plaintiff/Appellant
Attorney I.D. No. 18839
2047 Locust Street
Philadelphia, PA 19103
P: 215-563-7776; F: 215-563-9996


Date:   August 31, 2023

# Exhibit "A"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHARON A. FINIZIE** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 23-294** |
| | : |
| **DENIS MCDONOUGH** | : |

## ORDER

**AND NOW**, this 9th day of August 2023, upon considering Defendant's Motion for summary judgment (ECF Doc. 21), Plaintiff's Opposition (ECF No. 22), Defendant's Reply (ECF No. 23), and finding no genuine issues of material fact precluding entry as a matter of law as more fully detailed in today's accompanying Memorandum, it is **ORDERED**:

1.      Defendant's Motion (ECF No. 21) is **GRANTED** dismissing all claims; and,

2.      The Clerk of Court shall **close** this case.

_____
**KEARNEY, J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARON A. FINIZIE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 23-294** |
| | : | |
| **DENIS MCDONOUGH** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **August 9, 2023**

An employer required applicants for an open nursing position in 2017 demonstrate experience in the last two years to be considered for the position. A sixty-three-year-old woman with relevant experience over twenty years earlier twice applied for the open position after trying for the same position for the past several years. The woman applicant earlier complained of discrimination by her employer with no success. The employer screened the applications for the 2017 posting. It denied the woman's applications again. The employer instead chose a younger woman with current or recent experience consistent with the qualifications in the job posting. The woman applicant now again sues her employer for retaliation and age and gender discrimination. She offers no evidence other than her beliefs. She did not adduce evidence which could allow us to find genuine issues of material fact on her three claims. We grant the employer's motion for summary judgment.

### I.     Undisputed Facts[1]

The United States Department of Veterans Affairs hired Sharon Finizie as an infection control nurse at the Philadelphia Department of Veterans Affairs Medical Center in 1981.[2] Ms. Finizie, certified in infection control, worked as an infection control nurse until May 1993.[3] The Department reassigned Ms. Finizie to a Quality Management Specialist role because of "multiple

alleged infractions" in May 1993.[4] Ms. Finizie remained in the Quality Management Specialist role until her 2018 retirement.[5] Ms. Finizie unsuccessfully applied for every infection control nurse vacancy from May 1993 through her 2018 retirement.[6]

Ms. Finizie filed twenty-two complaints with the Equal Employment Opportunity Commission against the Department during her career in response to not obtaining infection control nurse positions.[7] She most recently filed a complaint in 2015.[8] Ms. Finizie's present challenges stem from the Department's denial of a June 2017 and August 2017 infection control nurse position.[9]

### *The 2017 Administrative Investigation Board.*

Medical Center Director Daniel Hendee requested an Administrative Board of Investigation be initiated in the Quality Management Department because of allegations of unprofessional behavior, sexual harassment, and workplace violence in February 2017.[10] Director of Quality Management Bruce Boxer reported the findings of the investigation to the entire Quality Management staff in April 2017.[11] Director Boxer informed Ms. Finizie the investigation contained findings negative findings about her including "she collaborated with Florence Kocher against other" employees and they engaged in unprofessional and complicit behavior.[12] Director Boxer spoke with Ms. Finizie and Ms. Kocher privately about the findings and moved Ms. Finizie to another office space not located in her product line.[13]

### *The Department did not select Ms. Finizie for the June 2017 infection control nurse vacancy.*

The Department posted an opening for an infection control nurse in June 2017.[14] Then sixty-three-year-old Ms. Finizie again applied for the position.[15] She held a Master of Science in Nursing degree, had approximately eleven-and-a-half years of past experience as an infection control nurse (from February 1981 to May 1993), and maintained a current national Certification

in Infection Control along with a Certified Professional in Healthcare Quality Certification at the time she applied for the position. The job posting identified preferred qualifications including "current infection control experience in a tertiary care facility."[16] Director Boxer and Health System Specialist Philomena Rego screened applicants by using a questionnaire and comparing resumes to the qualifications in the job announcement.[17] Director Boxer and Specialist Rego screened Ms. Finizie, found her not suitable, and notified her of her non-selection on July 25, 2017.[18] Only female candidates moved forward to the interview round, and the Department ultimately selected a female candidate in her thirties who had both national infection control certification and recent infection control experience.[19]

### The Department did not select Ms. Finizie for the August 2017 vacancy.

The female selectee for the June 2017 vacancy declined.[20] The Department posted a second announcement to fill the same vacancy.[21] Ms. Finizie applied again.[22] The job posting listed "certification in infection control" and "recent (within the last two (2) years) infection control experience in a tertiary care facility" as required qualifications.[23] The Department again screened out Ms. Finizie and notified her of her non-selection on September 6, 2017.[24] The Department selected three females with the necessary qualifications for the interview panel to consider.[25] The Department offered the position to a nurse in her forties with eighteen years of *current* experience.[26] This nurse also refused the position. The panel did not select any of the other candidates and the Department did not fill the position until 2018.[27]

### Ms. Finizie files complaints with the Equal Employment Opportunity Commission.

Ms. Finizie filed formal complaints with the Equal Employment Opportunity Commission in response to not being selected for the June and August 2017 vacancies alleging she had been discriminated against by the Department "in reprisal for her prior EEO activity and

3

due to her age and gender/sex."[28] The Equal Employment Opportunity Commission granted summary judgment in favor of the Department on October 31, 2022.[29]

### *Ms. Finizie sues the Department.*

Ms. Finizie now sues the Department alleging retaliation and gender discrimination under Title VII and age discrimination under the Age Discrimination in Employment Act.[30] Ms. Finizie seeks monetary damages, costs and reasonable attorney's fees, and placement into the Department's infection preventionist position.

## II.    Analysis

The Department now moves for summary judgment.[31] The Department argues: (1) the Department had valid, non-retaliatory reasons for choosing another nurse for the 2017 infection control nurse vacancies, and (2) Ms. Finizie offers no evidence of either gender or age discrimination in violation of Title VII and the Age Discrimination in Employment Act.[32] Ms. Finizie responds the Department established the infection nurse job qualifications in bad faith, did not give her application fair consideration, and discriminated against her because of her earlier complaints to the Commission and because she is an older woman.[33]

Ms. Finizie presents no genuine issues of material fact. The Department is entitled to judgment as a matter of law on Ms. Finizie's claims under Title VII and the Age Discrimination in Employment Act. Ms. Finizie fails to adduce evidence of retaliation against her based on her earlier activity with the Commission or discrimination against her based on her gender or age when the Department screened and passed onto the interview panel only female candidates and Ms. Finizie fails to show any reasonable inference of age discrimination.

**A.  We grant summary judgment dismissing Ms. Finizie's retaliation claim.**

Ms. Finizie claims the Department intentionally discriminated against her based on earlier complaints with the Commission when it did not select her for an open position she qualified for.[34] Ms. Finizie argues the Department intentionally discriminated against her based on her earlier complaints with the Commission and included arbitrary and capricious job qualifications specifically to exclude Ms. Finizie from selection.[35]

Congress in Title VII prohibits an employer from discriminating "against any individual . . . because [s]he has opposed any . . . unlawful employment practice . . . or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[36] We analyze Title VII retaliation claims through the three-part *McDonnell Douglas* burden shifting framework.[37] Ms. Finizie must first establish a *prima facie* case of discrimination. To proceed on a *prima facie* case of Title VII retaliation Ms. Finizie must show: "(1) she engaged in activity protected by Title VII; (2) [the Department] took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."[38]

If Ms. Finizie meets this burden, the burden shifts to the Department to provide a legitimate, non-retaliatory reason for the alleged adverse employment actions.[39] If the Department does so, the burden shifts back to Ms. Finizie to convince us "the [the Department's] proffered explanation was false [a pretext], and that retaliation was the real reason for the adverse employment action."[40] Ms. Finizie cannot simply show the Department made a wrong or mistaken decision "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."[41] Ms. Finizie must instead actually demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies,

or contradictions in the [Department's] proffered legitimate reasons for its action," so "a reasonable factfinder could rationally find them 'unworthy of credence.'"[42] Ms. Finizie's personal opinion the Department acted unfairly does not suffice to show pretext.[43]

### a. Ms. Finizie cannot show a *prima facie* case of retaliation.

Ms. Finizie engaged in protected activity under Title VII by filing over twenty Equal Employment Opportunity Commission complaints based on the Department not selecting her for the infection control nurse positions.[44] The Department concedes Ms. Finizie satisfies this first element her *prima facie* retaliation claim.[45] The Department also concedes under the United States Supreme Court's holding in *Burlington Northern and Santa Fe Ry. Co. v. White*, the Department's decisions not to select Ms. Finizie for the two vacancies could be considered "materially adverse" under the second element of her *prima facie* case.[46] The parties' dispute centers on whether Ms. Finizie can establish a causal connection between her participation in the protected activity and the adverse employment action under the third element of her *prima facie* case.

Ms. Finizie must provide "some evidence [] the individuals responsible for the adverse action knew of [her] protected conduct at the time they acted" under prong three of her *prima facie* case.[47] Ms. Finizie must then demonstrate a link between her protected activity and her rejection for the 2017 vacancies by either (1) "pointing to an 'unusually suggestive' temporal proximity between the protected activity and adverse action," or (2) establishing "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."[48] Ms. Finizie must "proffer evidence sufficient to raise the inference [] her engagement in a protected

activity was the *likely reason* for the adverse employment action" to establish a causal connection required as the third element of her *prima facie* case.[49] Ms. Finizie needs to present evidence showing "but for" her filing of her complaint her employer would have hired her for the positions.[50]

Our Court of Appeals instructs employees cannot establish a causal connection between non-selection for a job vacancy and a complaint with the Commission when the record shows the employer selected another more qualified candidate for a position. In *D'Ambrosio v. Crest Haven Nursing & Rehabilitation Center*, the employee sought two separate positions as a scheduling coordinator and a finance director.[51] Her employer selected someone with more relevant experience for the role and, because the employee had no background in finance, it selected someone with finance experience for the finance director position.[52] Our Court of Appeals affirmed the employer did not retaliate when it selected other more qualified applicants.[53]

We also look to temporal proximity when analyzing causation.[54] Our Court of Appeals instructs even short periods of time between the protected activity and adverse action alone is not enough to establish causation. For example, in *Petti v. Ocean County Board of Health* the employee failed to establish a *prima facie* case of Title VII retaliation because she failed to show her employer likely terminated her because she filed a complaint with the Public Employees Occupational Safety and Health Program.[55] Our Court of Appeals held six months passed between employee's filing of the complaint and the employer's initiation of her termination proceedings and this timeframe alone could not establish her employer likely fired her because she filed the complaint.[56] In *Motto v. Wal-Mart Stores E., LP,* our Court of Appeals instructed an even shorter timeframe of eleven days not "unusually suggestive of retaliatory motive[.]"[57]

The employee in *Motto* claimed the eleven-day period between his sexual harassment complaint and termination proved causation.[58] Our Court of Appeals disagreed and held the timing by itself insufficient to establish a causal link and the employee failed to present evidence of antagonism or retaliatory animus in the intervening time.[59]

Ms. Finizie has shown she (1) engaged in protected activity by filing many complaints with the Commission, most recently in 2015; and (2) suffered an adverse action when the Department twice rejected her for the infection control nurse position in 2017. Ms. Finizie has shown the Department's personnel knew of her earlier complaints and it is possible other individuals on the interview panels knew of her past activity. But she has not shown Director Boxer, or anyone else on the selection committee, had animus towards her.[60]

Ms. Finizie cannot show a causal connection with knowledge alone. Ms. Finizie does not show "unusually suggestive" temporal proximity between her protected activity and not being selected for the two 2017 vacancies. Ms. Finizie filed her last complaint with the Commission in 2015 approximately two years before applying for the 2017 vacancies.[61] Even more time passed since Ms. Finizie filed her latest complaint with the Commission than reviewed by our Court of Appeals in *Petti* and *Motto.* There is also no evidence the findings from the investigative board influenced the selection committee's decision to not interview Ms. Finizie.

Like our Court of Appeals' analysis in *D'Ambrosio*, there is ample evidence the Department did not select Ms. Finizie for the two vacancies because the Department viewed other applicants as more qualified for the infection control nurse positions given their more current experience. The candidates selected to proceed to interview contained the requisite "recent" or "current" infection control experience, and Ms. Finizie had not had infection control experience since 1993. Ms. Finizie, like the employee in *D'Ambrosio*, fails to present evidence

showing but for her previous activity with the Commission the Department would have selected her for the positions.

Ms. Finizie points to no evidence, other than her own subjective belief, the Department did not hire Ms. Finizie for the two 2017 vacancies because of her earlier complaints to the Commission. Ms. Finizie fails to show inconsistencies in the reasons the Department gave for not hiring her or other evidence suggesting the Department had a retaliatory animus. No part of the record supports Ms. Finizie's belief the Department set arbitrary hiring criteria and did not hire her for the positions because of her earlier complaints with the Commission. Ms. Finizie needs evidence not her belief lacking evidence.

### b. The Department established legitimate, non-discriminatory reasons for not hiring Ms. Finizie.

Ms. Finizie did not adduce evidence of retaliation even if she had been able to establish a prima facie case. The Department provided a legitimate, non-retaliatory reason for not hiring Ms. Finizie for the 2017 vacancies: the Department screened and interviewed candidates who met their preferred qualification of current infection control experience.[62]

Ms. Finizie must now point to some evidence, direct or circumstantial, from which we could reasonably either "(1) disbelieve the [the Department's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[63] Our Court of Appeals repeatedly instructs an employer successfully demonstrated a legitimate, non-retaliatory reason when ample evidence in the record showed the employer selected another more qualified candidate for a position.[64] Because the Department "is permitted to decide which job criteria are important and to determine what skill set is most appropriate for a given position[,]" Ms. Finizie "cannot establish pretext simply from the fact [the Department] valued [other candidates'] skills and experiences over the

skills and experiences [she] brought to the table."[65] Ms. Finizie's unsupported subjective belief the Department did not hire her for retaliatory reasons falls short of establishing pretext.[66]

An employee cannot establish pretext by claiming they were more qualified for the position than the selected applicant. Our Court of Appeals in *Steele v. Pelmor Laboratories Inc.* instructed an employee seeking a vice president position could not credibly claim she held more qualifications than her competitor to prove pretext under Title VII because her competitor had more significant managerial experience.[67] The employee in *Steele* did not have the experience in high-level managerial positions needed for the job despite having longer experience working in the company.[68] The court of appeals reasoned an employee needs more to establish pretext beyond her belief she is better qualified for a job.[69] Ms. Finizie must show the qualifications of the person actually interviewed or selected were so much lower than those of her competitors for a reasonable factfinder to disbelieve the claim the employer honestly sought the best qualified candidate.[70] Ms. Finizie does not do so.

We find no evidence allowing us to reasonably disbelieve the Department's legitimate, non-discriminatory reason for not selecting Ms. Finizie for either job opening. It is undisputed Ms. Finizie did not have the preferred or requisite qualification of "*current* infection control experience in a tertiary care facility" or "*recent (within the last two (2) years)* infection control experience in a tertiary care facility" as prescribed in the job postings.[71] Ms. Finizie did not work as an infection control nurse since 1993.[72] Ms. Finizie's infection control nurse experience from twenty-four years ago (as of 2017) does not meet the "recent" or "current" experience required by the job description.[73] The Department selected candidates then actively working as infection control nurses.[74] It is undisputed, and acknowledged by Ms. Finizie, the women selected for interviews and ultimately offered the job had the necessary qualifications for consideration by

the interview panel.[75] Ms. Finizie does not, and cannot, show the "qualifications of the person actually promoted or selected were so much lower than those of her competitors for a reasonable factfinder to disbelieve the claim the employer honestly sought the best qualified candidate."[76] Ms. Finizie's qualifications were in fact lower than those selected. The undisputed facts confirm Department had a legitimate, non-discriminatory reason for not selecting Ms. Finizie. She does not establish pretext. Her retaliation claim lacks an evidentiary basis for trial and must be dismissed as a matter of law.

**B. We grant summary judgment dismissing the gender discrimination claim.**

Ms. Finizie claims the Department intentionally discriminated against her based on her gender.[77] It is unclear how Ms. Finizie can allege gender discrimination when the Department only interviewed and selected female candidates.[78] Ms. Finizie's theory of gender discrimination is not articulated or adequately addressed in her opposition to summary judgment. We also acknowledge Ms. Finizie alleged this same gender discrimination when not selected for 2012, 2015, and 2018 infection control nurse vacancies.[79] Our colleagues dismissed every gender discrimination claim in these federal complaints based on non-selections for the infection control nurse vacancies on summary judgment because all interviewees and selectees were also female.[80] We too grant summary judgment against Ms. Finizie's gender discrimination claim because all interviewees and selectees were female.

**C. We grant summary judgment dismissing the age discrimination claim.**

Ms. Finizie also alleges the Department discriminated against her because of her age.[81] Ms. Finizie does not clearly articulate how the Department discriminated against her based on her age. She alleges only the Department offered the position to women in their "thirties" and "forties" and "discrimination against older woman is rampant" in the Department's facilities.[82]

11

Congress through the Age Discrimination in Employment Act makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[83] Ms. Finizie does not have direct evidence of age discrimination. So she must prove her claim through circumstantial evidence.[84] We again apply the three-part *McDonnell Douglas* framework to Ms. Finizie's age discrimination claim.[85] Ms. Finizie must first establish a *prima facie* case of age discrimination which requires Ms. Finizie show she (1) is over forty; (2) qualified for the infection control nurse position; (3) suffered from an adverse employment decision; and (4) the Department replaced her with someone sufficiently younger and similarly situated to permit a reasonable inference of age discrimination.[86] Ms. Finizie's own belief, without supporting evidence, is insufficient to establish an inference of discrimination.[87] If Ms. Finizie establishes her *prima facie* case, the burden shifts to the Department to show a legitimate, non-discriminatory reason for its adverse employment decision.[88] If the Department does so, the burden shifts back to Ms. Finizie to show the Department's proffered reason is pretext.[89]

Ms. Finizie cannot meet the "qualification" prong or the "reasonable inference of age discrimination" prong to establish her *prima facie* case.  It is undisputed Ms. Finizie did not have the requisite "current" or "recent" infection control experience required by the Department.[90] She did not meet the required or preferred qualifications of the job postings.[91] Then sixty-three-year-old Ms. Finizie also offers no evidence of age-related remarks or specific examples of favorable treatment of younger employees at the Department. She does not adduce evidence of the exact ages of the women chosen for the positions because it appears Mr. Finizie never took discovery of these two women to support her age discrimination claim.

12

The fact the Department interviewed and selected people younger than Ms. Finizie alone cannot establish a "reasonable inference of age discrimination." We have no evidence whether the Department interviewed and selected women similarly situated to Ms. Finizie.[92] Ms. Finizie fails to establish a *prima facie* case of age discrimination because she has not shown she qualified for the infection control nurse vacancies or shown the younger interviewees were similarly situated to her.

Ms. Finizie does not, and cannot, overcome the legitimate, non-discriminatory reason offered by the Department even assuming she could establish a *prima facie* case. The Department choose to interview and select the other candidates because they had current infection control nurse experience and Ms. Finizie fails to present credible evidence to the contrary. Ms. Finizie offers no evidence other than her subjective belief the Department passed over her because of her age. Ms. Finizie cannot establish either a *prima facie* case of age discrimination or, alternatively, pretext for the Department's legitimate, non-discriminatory reason. We grant the Department's motion for summary judgment on Ms. Finizie's age discrimination claim.

## III.    Conclusion

Ms. Finizie at age sixty-three applied for open positions as an infection control nurse with the Department in June and August 2017. Ms. Finizie last worked as an infection control nurse in 1993. The Department denied her applications and interviewed and selected other candidates with more recent infection control experience. The Department adduces undisputed evidence it required recent infection control experience as a required qualification for the infection control vacancies.

Ms. Finizie claims the Department rejected her for these positions in retaliation for her past Equal Employment Opportunity activity in 2015. Ms. Finizie also claims the Department discriminated against her based on her age and gender. We find no genuine issues of fact material to Ms. Finizie's claims. She fails to establish retaliation, age, or gender discrimination under federal law. We enter summary judgment in favor of her former employer Department and dismiss Ms. Finizie's claims under Title VII and the Age Discrimination in Employment Act.

---

[1] Our Policies require a Statement of Undisputed Facts ("SUMF") and appendix in support of summary judgment. Defendant Denis McDonough, Secretary, United States Department of Veterans Affairs (the "Department") filed its SUMF at ECF No. 21-1 ("Department SUMF") and submitted its appendix in support of its motion for summary judgment at EFC No. 21-2. Ms. Finizie responded to the Department's SUMF at ECF No. 22-4 ("Finizie Response to Department SUMF") and attached her appendix in opposition to summary judgment at ECF No. 22-3.

[2] Department SUMF ¶¶ 1–2; Finizie Response to Department SUMF ¶¶ 1–2.

[3] Department SUMF ¶ 2; Finizie Response to Department SUMF ¶ 2.

[4] Department SUMF ¶ 4. Finizie Response to Department SUMF ¶ 4.

[5] Department SUMF ¶¶ 5–6. Finizie Response to Department SUMF ¶¶ 5-6.

[6] Department SUMF ¶¶ 5–6. Finizie Response to Department SUMF ¶¶ 5-6.

[7] ECF No. 21-2 at 266–67.

[8] *Id.*

[9] Department SUMF ¶ 33, 43; Finizie Response to Department SUMF ¶ 33, 43.

[10] Department SUMF ¶¶ 15–16; Finizie Response to Department SUMF ¶¶ 15–16. The parties dispute whether the investigation targeted only Ms. Finizie and co-worker Florence Kocher. But this fact is immaterial to our summary judgment analysis.

[11] Department SUMF ¶ 20; Finizie Response to Department SUMF ¶ 20.

[12] Department SUMF ¶ 21; Finizie Response to Department SUMF ¶ 21.

14

[13] Department SUMF ¶¶ 22–23; Finizie Response to SUMF ¶¶ 22–23.

[14] Department SUMF ¶ 24; Finizie Response to Department SUMF ¶ 24.

[15] Department SUMF ¶ 30, Finizie Response to Department SUMF ¶ 30.

[16] Department SUMF ¶¶ 10, 25, 26; Finizie Response to Department SUMF ¶¶ 10, 25, 26.

[17] Department SUMF ¶¶11, 29; Finizie Response to Department SUMF ¶¶ 11, 29.

[18] Department SUMF ¶¶ 32, 33; Finizie Response to Department SUMF ¶¶ 32, 33. The parties primarily disagree about why the Department screened out Ms. Finizie.

[19] Department SUMF ¶¶ 31, 34; Finizie Response to Department SUMF ¶¶ 31, 34.

[20] Department SUMF ¶ 36; Finizie Response to Department SUMF ¶ 36.

[21] Department SUMF ¶ 37; Finizie Response to Department SUMF ¶ 37.

[22] Department SUMF ¶ 39; Finizie Response to Department SUMF ¶ 39.

[23] Department SUMF ¶ 38; Finizie Response to Department SUMF ¶ 38.

[24] Department SUMF ¶ 40, 43; Finizie Response to Department SUMF ¶ 40, 43.

[25] Department SUMF ¶ 45; Finizie Response to Department SUMF ¶ 45.

[26] ECF No. 21-2 at 69.

[27] Department SUMF ¶ 46; Finizie Response to Department SUMF ¶ 46.

[28] ECF No. 1 ¶ 9.

[29] *Id.* ¶ 11.

[30] ECF No. 1. Ms. Finizie unsuccessfully litigated similar retaliation claims against the Department related to her non-selection for the infection control nurse position. *See, e.g., Finizie v. Sec'y, United States Dep't of Veterans Affairs*, 751 F. App'x 300, 303 (3d Cir. 2018) (affirming Judge Robreno's grant of summary judgment for the Department on Ms. Finizie's retaliation claim); *Finizie v. Shineski*, 351 F. App'x 668, 673 (3d Cir. 2009) (affirming Judge Dalzell's grant of summary judgment for the Department on Ms. Finizie's retaliation claim); *Finizie v. Principi*, 69 F. App'x 571, 575 (3d Cir. 2003) (affirming denial of motion for a new trial following bench trial where Judge Dalzell entered judgment for the Department on Mr. Finizie's retaliation claim); *Finizie v. McDonough*, No. 20-6513 (E.D. Pa. June 17, 2022) (Judge Younge granting summary judgment to the Department on Ms. Finizie's retaliation claim). We

15

denied Ms. Finizie's retaliation, sex discrimination, and age discrimination on summary judgment last September relating to infection control nurse vacancies in 2018. *See Finizie v. McDonough*, No. 21-5586, 2022 WL 4635876 (E.D. Pa. Sept. 30, 2022).

[31] ECF No. 21. Ms. Finizie opposed summary judgment at ECF No. 22 and the Department replied at ECF No. 23. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[32] EFC No. 21 at 9–23.

[33] ECF No. 22.

[34] ECF No. 1 ¶ 47. She also briefly alleges the Department subjected her to the Administrative Board of Investigation process; moved to a smaller workspace; and gave her a lowered proficiency report. *Id.*

[35] ECF No. 22 at 14.

[36] 42 U.S.C. § 2000e-3(a).

[37] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Egelkamp v. Archdiocese of Phila.*, No. 19-3734, 2021 WL 1979422, at *9 (E.D. Pa. May 18, 2021) (citing *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)).

[38] *Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 64 (3d Cir. 2020) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (citation omitted)).

[39] *Carvalho-Grevious*, 851 F.3d at 257 (citing *Moore*, 461 F.3d at 342).

[40] *Id.* (citing *Moore*, 461 F.3d at 342).

[41] *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

[42] *Id.*

[43] *Mulcahy v. Skipper*, No. 21-2788, 2022 WL 3081873, at *2 (3d Cir. Aug. 3, 2022) (internal citations omitted).

[44] ECF No. 21-2 at 266–67.

[45] ECF No. 21 at 11.

[46] *Id.*; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). The Supreme Court in *Burlington Northern* held the anti-retaliation provision of Title VII covers employer actions considered "materially adverse to a reasonable employee or job applicant." *Id.* This teaching means the employer's actions are harmful to the point where it could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*

[47] *Chambers v. Pennsylvania*, No. 19-2867, 2020 WL 4699045, at *6 (E.D. Pa. Aug. 13, 2020) (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015)).

[48] *Id.* (citing *Daniels*, 776 F.3d at 196).

[49] *Petti*, 831 F. App'x at 64 (quoting *Carvalho-Grevious*, 851 F.3d at 253) (emphasis in original)).

[50] *Mazur v. Sw. Veterans Ctr.*, 803 F. App'x 657, 662 (3d Cir. 2020) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)); *D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr.*, 755 F. App'x 147, 152–53 (3d Cir. 2018).

[51] *D'Ambrosio,* 755 F. App'x at 152–53.

[52] *Id.*

[53] *Id.*

[54] *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018) ("Close 'temporal proximity,' between the protected status or action by the employee and the adverse action by the employer, is suggestive but not determinative of causation." (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

17

[55] *Petti*, 831 F. App'x at 64.

[56] *Id.*

[57] *Motto v. Wal-Mart Stores E., LP*, 563 F. App'x 160 (3d Cir. 2014).

[58] *Id.*

[59] *Id.* at 163–64.

[60] ECF No. 21 at 13.

[61] ECF No. 21-2 at 266–67.

[62] ECF No. 21 at 14.

[63] *Taylor v. Cherry Hill Bd. of Educ.*, 85 F. App'x 836, 840 (3d Cir. 2004) (quoting *Fuentes*, 32 F.3d at 764).

[64] *Id.*; *see also D'Ambrosio*, 755 F. App'x at 152–53.

[65] *Nunn v. NHS Hum. Servs., Inc.*, 110 F. Supp. 3d 554, 568 (E.D. Pa. 2015).

[66] *James v. Sutliff Saturn, Inc.*, 468 F. App'x 118, 121 (3d Cir. 2012) (internal citations omitted).

[67] *Steele v. Pelmor Lab'ys Inc.*, 642 F. App'x 129, 135 (3d Cir. 2016).

[68] *Id.*

[69] *Id.*

[70] *Id.* (citing *Bray v. Marriott Hotels*, 110 F.3d 986, 999 (3d Cir.1997) (Alito, J., dissenting)).

[71] Department SUMF ¶¶ 10, 38; Finizie Response to Department SUMF ¶¶ 10, 38. (emphasis added).

[72] Department SUMF ¶ 5; Finizie Response to Department SUMF ¶ 5.

[73] Department SUMF ¶ 27; Finizie Response to Department SUMF ¶ 27.

[74] Department SUMF ¶ 34; Finizie Response to Department SUMF ¶ 34.

[75] Department SUMF ¶ 45; Finizie Response to Department SUMF ¶ 45.

[76] *Steele*, 642 F. App'x at 135.

[77] ECF No. 1 at ¶¶ 51–60.

[78] Department SUMF ¶¶ 31, 34, 44, 45; Finizie Response to Department SUMF ¶¶ 31, 34, 44, 45.

[79] ECF No. 21 at 17.

[80] ECF No. 21-2 at 230–264.

[81] ECF No. 1 at ¶¶ 61–69.

[82] *Id.* ¶¶ 37, 41; ECF No. 22 at 17.

[83] 29 U.S.C. § 623(a)(1).

[84] *Gress v. Temple Univ. Health Sys.*, 784 F. App'x 100, 104 (3d Cir. 2019).

[85] *Borzak v. City of Bethlehem*, No. 19-5716, 2021 WL 6073095, at *12 (E.D. Pa. Dec. 23, 2021) (internal citations omitted); *see also McDonnell Douglas*, 411 U.S. at 802.

[86] *Id.* (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).

[87] *Gardner v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 21-3422, 2022 WL 3647824, at *8 (E.D. Pa. Aug. 24, 2022). *See also Hartman v. Select Rehab.*, LLC, 528 F. Supp. 3d 373, 384 (E.D. Pa. 2021) (citing *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 301 (3d Cir. 2004)).

[88] *Smith v. City of Allentown,* 589 F.3d 684, 690 (3d Cir. 2009).

[89] *Id.*

[90] Department SUMF ¶¶ 5,27; Finizie Response to Department SUMF ¶¶ 5, 27.

[91] Department SUMF ¶ 10, 26; Finizie Response to Department SUMF ¶ 10, 26.

[92] *Hartman v. Select Rehab.*, LLC, 528 F. Supp. 3d at 384–85.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHARON A. FINIZIE** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 23-294** |
| | : |
| **DENIS MCDONOUGH** | : |

## ORDER

**AND NOW**, this 9th day of August 2023, upon considering Defendant's Motion for summary judgment (ECF Doc. 21), Plaintiff's Opposition (ECF No. 22), Defendant's Reply (ECF No. 23), and finding no genuine issues of material fact precluding entry as a matter of law as more fully detailed in today's accompanying Memorandum, it is **ORDERED**:

1.    Defendant's Motion (ECF No. 21) is **GRANTED** dismissing all claims; and,

2.    The Clerk of Court shall **close** this case.

_____
**KEARNEY, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARON A. FINIZIE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-294 |
| | : | |
| DENIS MCDONOUGH | : | |

## MEMORANDUM

**KEARNEY, J.**                                                    **August 9, 2023**

An employer required applicants for an open nursing position in 2017 demonstrate experience in the last two years to be considered for the position. A sixty-three-year-old woman with relevant experience over twenty years earlier twice applied for the open position after trying for the same position for the past several years. The woman applicant earlier complained of discrimination by her employer with no success. The employer screened the applications for the 2017 posting. It denied the woman's applications again. The employer instead chose a younger woman with current or recent experience consistent with the qualifications in the job posting. The woman applicant now again sues her employer for retaliation and age and gender discrimination. She offers no evidence other than her beliefs. She did not adduce evidence which could allow us to find genuine issues of material fact on her three claims. We grant the employer's motion for summary judgment.

## I.    Undisputed Facts[1]

The United States Department of Veterans Affairs hired Sharon Finizie as an infection control nurse at the Philadelphia Department of Veterans Affairs Medical Center in 1981.[2] Ms. Finizie, certified in infection control, worked as an infection control nurse until May 1993.[3] The Department reassigned Ms. Finizie to a Quality Management Specialist role because of "multiple

alleged infractions" in May 1993.[4] Ms. Finizie remained in the Quality Management Specialist role until her 2018 retirement.[5] Ms. Finizie unsuccessfully applied for every infection control nurse vacancy from May 1993 through her 2018 retirement.[6]

Ms. Finizie filed twenty-two complaints with the Equal Employment Opportunity Commission against the Department during her career in response to not obtaining infection control nurse positions.[7] She most recently filed a complaint in 2015.[8] Ms. Finizie's present challenges stem from the Department's denial of a June 2017 and August 2017 infection control nurse position.[9]

### *The 2017 Administrative Investigation Board.*

Medical Center Director Daniel Hendee requested an Administrative Board of Investigation be initiated in the Quality Management Department because of allegations of unprofessional behavior, sexual harassment, and workplace violence in February 2017.[10] Director of Quality Management Bruce Boxer reported the findings of the investigation to the entire Quality Management staff in April 2017.[11] Director Boxer informed Ms. Finizie the investigation contained findings negative findings about her including "she collaborated with Florence Kocher against other" employees and they engaged in unprofessional and complicit behavior.[12] Director Boxer spoke with Ms. Finizie and Ms. Kocher privately about the findings and moved Ms. Finizie to another office space not located in her product line.[13]

### *The Department did not select Ms. Finizie for the June 2017 infection control nurse vacancy.*

The Department posted an opening for an infection control nurse in June 2017.[14] Then sixty-three-year-old Ms. Finizie again applied for the position.[15] She held a Master of Science in Nursing degree, had approximately eleven-and-a-half years of past experience as an infection control nurse (from February 1981 to May 1993), and maintained a current national Certification

in Infection Control along with a Certified Professional in Healthcare Quality Certification at the time she applied for the position. The job posting identified preferred qualifications including "current infection control experience in a tertiary care facility."[16] Director Boxer and Health System Specialist Philomena Rego screened applicants by using a questionnaire and comparing resumes to the qualifications in the job announcement.[17] Director Boxer and Specialist Rego screened Ms. Finizie, found her not suitable, and notified her of her non-selection on July 25, 2017.[18] Only female candidates moved forward to the interview round, and the Department ultimately selected a female candidate in her thirties who had both national infection control certification and recent infection control experience.[19]

### The Department did not select Ms. Finizie for the August 2017 vacancy.

The female selectee for the June 2017 vacancy declined.[20] The Department posted a second announcement to fill the same vacancy.[21] Ms. Finizie applied again.[22] The job posting listed "certification in infection control" and "recent (within the last two (2) years) infection control experience in a tertiary care facility" as required qualifications.[23] The Department again screened out Ms. Finizie and notified her of her non-selection on September 6, 2017.[24] The Department selected three females with the necessary qualifications for the interview panel to consider.[25] The Department offered the position to a nurse in her forties with eighteen years of *current* experience.[26] This nurse also refused the position. The panel did not select any of the other candidates and the Department did not fill the position until 2018.[27]

### Ms. Finizie files complaints with the Equal Employment Opportunity Commission.

Ms. Finizie filed formal complaints with the Equal Employment Opportunity Commission in response to not being selected for the June and August 2017 vacancies alleging she had been discriminated against by the Department "in reprisal for her prior EEO activity and

due to her age and gender/sex."[28] The Equal Employment Opportunity Commission granted summary judgment in favor of the Department on October 31, 2022.[29]

*Ms. Finizie sues the Department.*

Ms. Finizie now sues the Department alleging retaliation and gender discrimination under Title VII and age discrimination under the Age Discrimination in Employment Act.[30] Ms. Finizie seeks monetary damages, costs and reasonable attorney's fees, and placement into the Department's infection preventionist position.

## II.    Analysis

The Department now moves for summary judgment.[31] The Department argues: (1) the Department had valid, non-retaliatory reasons for choosing another nurse for the 2017 infection control nurse vacancies, and (2) Ms. Finizie offers no evidence of either gender or age discrimination in violation of Title VII and the Age Discrimination in Employment Act.[32] Ms. Finizie responds the Department established the infection nurse job qualifications in bad faith, did not give her application fair consideration, and discriminated against her because of her earlier complaints to the Commission and because she is an older woman.[33]

Ms. Finizie presents no genuine issues of material fact. The Department is entitled to judgment as a matter of law on Ms. Finizie's claims under Title VII and the Age Discrimination in Employment Act. Ms. Finizie fails to adduce evidence of retaliation against her based on her earlier activity with the Commission or discrimination against her based on her gender or age when the Department screened and passed onto the interview panel only female candidates and Ms. Finizie fails to show any reasonable inference of age discrimination.

4

**A. We grant summary judgment dismissing Ms. Finizie's retaliation claim.**

Ms. Finizie claims the Department intentionally discriminated against her based on earlier complaints with the Commission when it did not select her for an open position she qualified for.[34] Ms. Finizie argues the Department intentionally discriminated against her based on her earlier complaints with the Commission and included arbitrary and capricious job qualifications specifically to exclude Ms. Finizie from selection.[35]

Congress in Title VII prohibits an employer from discriminating "against any individual . . . because [s]he has opposed any . . . unlawful employment practice . . . or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under Title VII.[36] We analyze Title VII retaliation claims through the three-part *McDonnell Douglas* burden shifting framework.[37] Ms. Finizie must first establish a *prima facie* case of discrimination. To proceed on a *prima facie* case of Title VII retaliation Ms. Finizie must show: "(1) she engaged in activity protected by Title VII; (2) [the Department] took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."[38]

If Ms. Finizie meets this burden, the burden shifts to the Department to provide a legitimate, non-retaliatory reason for the alleged adverse employment actions.[39] If the Department does so, the burden shifts back to Ms. Finizie to convince us "the [the Department's] proffered explanation was false [a pretext], and that retaliation was the real reason for the adverse employment action."[40] Ms. Finizie cannot simply show the Department made a wrong or mistaken decision "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."[41] Ms. Finizie must instead actually demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies,

or contradictions in the [Department's] proffered legitimate reasons for its action," so "a reasonable factfinder could rationally find them 'unworthy of credence.'"[42] Ms. Finizie's personal opinion the Department acted unfairly does not suffice to show pretext.[43]

### a. Ms. Finizie cannot show a *prima facie* case of retaliation.

Ms. Finizie engaged in protected activity under Title VII by filing over twenty Equal Employment Opportunity Commission complaints based on the Department not selecting her for the infection control nurse positions.[44] The Department concedes Ms. Finizie satisfies this first element her *prima facie* retaliation claim.[45] The Department also concedes under the United States Supreme Court's holding in *Burlington Northern and Santa Fe Ry. Co. v. White*, the Department's decisions not to select Ms. Finizie for the two vacancies could be considered "materially adverse" under the second element of her *prima facie* case.[46] The parties' dispute centers on whether Ms. Finizie can establish a causal connection between her participation in the protected activity and the adverse employment action under the third element of her *prima facie* case.

Ms. Finizie must provide "some evidence [] the individuals responsible for the adverse action knew of [her] protected conduct at the time they acted" under prong three of her *prima facie* case.[47] Ms. Finizie must then demonstrate a link between her protected activity and her rejection for the 2017 vacancies by either (1) "pointing to an 'unusually suggestive' temporal proximity between the protected activity and adverse action," or (2) establishing "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action."[48] Ms. Finizie must "proffer evidence sufficient to raise the inference [] her engagement in a protected

activity was the *likely reason* for the adverse employment action" to establish a causal connection required as the third element of her *prima facie* case.[49] Ms. Finizie needs to present evidence showing "but for" her filing of her complaint her employer would have hired her for the positions.[50]

Our Court of Appeals instructs employees cannot establish a causal connection between non-selection for a job vacancy and a complaint with the Commission when the record shows the employer selected another more qualified candidate for a position. In *D'Ambrosio v. Crest Haven Nursing & Rehabilitation Center*, the employee sought two separate positions as a scheduling coordinator and a finance director.[51] Her employer selected someone with more relevant experience for the role and, because the employee had no background in finance, it selected someone with finance experience for the finance director position.[52] Our Court of Appeals affirmed the employer did not retaliate when it selected other more qualified applicants.[53]

We also look to temporal proximity when analyzing causation.[54] Our Court of Appeals instructs even short periods of time between the protected activity and adverse action alone is not enough to establish causation. For example, in *Petti v. Ocean County Board of Health* the employee failed to establish a *prima facie* case of Title VII retaliation because she failed to show her employer likely terminated her because she filed a complaint with the Public Employees Occupational Safety and Health Program.[55] Our Court of Appeals held six months passed between employee's filing of the complaint and the employer's initiation of her termination proceedings and this timeframe alone could not establish her employer likely fired her because she filed the complaint.[56] In *Motto v. Wal-Mart Stores E., LP,* our Court of Appeals instructed an even shorter timeframe of eleven days not "unusually suggestive of retaliatory motive[.]"[57]

The employee in *Motto* claimed the eleven-day period between his sexual harassment complaint and termination proved causation.[58] Our Court of Appeals disagreed and held the timing by itself insufficient to establish a causal link and the employee failed to present evidence of antagonism or retaliatory animus in the intervening time.[59]

Ms. Finizie has shown she (1) engaged in protected activity by filing many complaints with the Commission, most recently in 2015; and (2) suffered an adverse action when the Department twice rejected her for the infection control nurse position in 2017. Ms. Finizie has shown the Department's personnel knew of her earlier complaints and it is possible other individuals on the interview panels knew of her past activity. But she has not shown Director Boxer, or anyone else on the selection committee, had animus towards her.[60]

Ms. Finizie cannot show a causal connection with knowledge alone. Ms. Finizie does not show "unusually suggestive" temporal proximity between her protected activity and not being selected for the two 2017 vacancies. Ms. Finizie filed her last complaint with the Commission in 2015 approximately two years before applying for the 2017 vacancies.[61] Even more time passed since Ms. Finizie filed her latest complaint with the Commission than reviewed by our Court of Appeals in *Petti* and *Motto.* There is also no evidence the findings from the investigative board influenced the selection committee's decision to not interview Ms. Finizie.

Like our Court of Appeals' analysis in *D'Ambrosio*, there is ample evidence the Department did not select Ms. Finizie for the two vacancies because the Department viewed other applicants as more qualified for the infection control nurse positions given their more current experience. The candidates selected to proceed to interview contained the requisite "recent" or "current" infection control experience, and Ms. Finizie had not had infection control experience since 1993. Ms. Finizie, like the employee in *D'Ambrosio*, fails to present evidence

showing but for her previous activity with the Commission the Department would have selected her for the positions.

Ms. Finizie points to no evidence, other than her own subjective belief, the Department did not hire Ms. Finizie for the two 2017 vacancies because of her earlier complaints to the Commission. Ms. Finizie fails to show inconsistencies in the reasons the Department gave for not hiring her or other evidence suggesting the Department had a retaliatory animus. No part of the record supports Ms. Finizie's belief the Department set arbitrary hiring criteria and did not hire her for the positions because of her earlier complaints with the Commission. Ms. Finizie needs evidence not her belief lacking evidence.

### b. The Department established legitimate, non-discriminatory reasons for not hiring Ms. Finizie.

Ms. Finizie did not adduce evidence of retaliation even if she had been able to establish a prima facie case. The Department provided a legitimate, non-retaliatory reason for not hiring Ms. Finizie for the 2017 vacancies: the Department screened and interviewed candidates who met their preferred qualification of current infection control experience.[62]

Ms. Finizie must now point to some evidence, direct or circumstantial, from which we could reasonably either "(1) disbelieve the [the Department's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[63] Our Court of Appeals repeatedly instructs an employer successfully demonstrated a legitimate, non-retaliatory reason when ample evidence in the record showed the employer selected another more qualified candidate for a position.[64] Because the Department "is permitted to decide which job criteria are important and to determine what skill set is most appropriate for a given position[,]" Ms. Finizie "cannot establish pretext simply from the fact [the Department] valued [other candidates'] skills and experiences over the

9

skills and experiences [she] brought to the table."[65] Ms. Finizie's unsupported subjective belief the Department did not hire her for retaliatory reasons falls short of establishing pretext.[66]

An employee cannot establish pretext by claiming they were more qualified for the position than the selected applicant. Our Court of Appeals in *Steele v. Pelmor Laboratories Inc.* instructed an employee seeking a vice president position could not credibly claim she held more qualifications than her competitor to prove pretext under Title VII because her competitor had more significant managerial experience.[67] The employee in *Steele* did not have the experience in high-level managerial positions needed for the job despite having longer experience working in the company.[68] The court of appeals reasoned an employee needs more to establish pretext beyond her belief she is better qualified for a job.[69] Ms. Finizie must show the qualifications of the person actually interviewed or selected were so much lower than those of her competitors for a reasonable factfinder to disbelieve the claim the employer honestly sought the best qualified candidate.[70] Ms. Finizie does not do so.

We find no evidence allowing us to reasonably disbelieve the Department's legitimate, non-discriminatory reason for not selecting Ms. Finizie for either job opening. It is undisputed Ms. Finizie did not have the preferred or requisite qualification of "*current* infection control experience in a tertiary care facility" or "*recent (within the last two (2) years)* infection control experience in a tertiary care facility" as prescribed in the job postings.[71] Ms. Finizie did not work as an infection control nurse since 1993.[72] Ms. Finizie's infection control nurse experience from twenty-four years ago (as of 2017) does not meet the "recent" or "current" experience required by the job description.[73] The Department selected candidates then actively working as infection control nurses.[74] It is undisputed, and acknowledged by Ms. Finizie, the women selected for interviews and ultimately offered the job had the necessary qualifications for consideration by

10

the interview panel.[75] Ms. Finizie does not, and cannot, show the "qualifications of the person actually promoted or selected were so much lower than those of her competitors for a reasonable factfinder to disbelieve the claim the employer honestly sought the best qualified candidate."[76] Ms. Finizie's qualifications were in fact lower than those selected. The undisputed facts confirm Department had a legitimate, non-discriminatory reason for not selecting Ms. Finizie. She does not establish pretext. Her retaliation claim lacks an evidentiary basis for trial and must be dismissed as a matter of law.

**B.  We grant summary judgment dismissing the gender discrimination claim.**

Ms. Finizie claims the Department intentionally discriminated against her based on her gender.[77] It is unclear how Ms. Finizie can allege gender discrimination when the Department only interviewed and selected female candidates.[78] Ms. Finizie's theory of gender discrimination is not articulated or adequately addressed in her opposition to summary judgment. We also acknowledge Ms. Finizie alleged this same gender discrimination when not selected for 2012, 2015, and 2018 infection control nurse vacancies.[79] Our colleagues dismissed every gender discrimination claim in these federal complaints based on non-selections for the infection control nurse vacancies on summary judgment because all interviewees and selectees were also female.[80] We too grant summary judgment against Ms. Finizie's gender discrimination claim because all interviewees and selectees were female.

**C.  We grant summary judgment dismissing the age discrimination claim.**

Ms. Finizie also alleges the Department discriminated against her because of her age.[81] Ms. Finizie does not clearly articulate how the Department discriminated against her based on her age. She alleges only the Department offered the position to women in their "thirties" and "forties" and "discrimination against older woman is rampant" in the Department's facilities.[82]

Congress through the Age Discrimination in Employment Act makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[83] Ms. Finizie does not have direct evidence of age discrimination. So she must prove her claim through circumstantial evidence.[84] We again apply the three-part *McDonnell Douglas* framework to Ms. Finizie's age discrimination claim.[85] Ms. Finizie must first establish a *prima facie* case of age discrimination which requires Ms. Finizie show she (1) is over forty; (2) qualified for the infection control nurse position; (3) suffered from an adverse employment decision; and (4) the Department replaced her with someone sufficiently younger and similarly situated to permit a reasonable inference of age discrimination.[86] Ms. Finizie's own belief, without supporting evidence, is insufficient to establish an inference of discrimination.[87] If Ms. Finizie establishes her *prima facie* case, the burden shifts to the Department to show a legitimate, non-discriminatory reason for its adverse employment decision.[88] If the Department does so, the burden shifts back to Ms. Finizie to show the Department's proffered reason is pretext.[89]

Ms. Finizie cannot meet the "qualification" prong or the "reasonable inference of age discrimination" prong to establish her *prima facie* case.  It is undisputed Ms. Finizie did not have the requisite "current" or "recent" infection control experience required by the Department.[90] She did not meet the required or preferred qualifications of the job postings.[91] Then sixty-three-year-old Ms. Finizie also offers no evidence of age-related remarks or specific examples of favorable treatment of younger employees at the Department. She does not adduce evidence of the exact ages of the women chosen for the positions because it appears Mr. Finizie never took discovery of these two women to support her age discrimination claim.

12

The fact the Department interviewed and selected people younger than Ms. Finizie alone cannot establish a "reasonable inference of age discrimination." We have no evidence whether the Department interviewed and selected women similarly situated to Ms. Finizie.[92] Ms. Finizie fails to establish a *prima facie* case of age discrimination because she has not shown she qualified for the infection control nurse vacancies or shown the younger interviewees were similarly situated to her.

Ms. Finizie does not, and cannot, overcome the legitimate, non-discriminatory reason offered by the Department even assuming she could establish a *prima facie* case. The Department choose to interview and select the other candidates because they had current infection control nurse experience and Ms. Finizie fails to present credible evidence to the contrary. Ms. Finizie offers no evidence other than her subjective belief the Department passed over her because of her age. Ms. Finizie cannot establish either a *prima facie* case of age discrimination or, alternatively, pretext for the Department's legitimate, non-discriminatory reason. We grant the Department's motion for summary judgment on Ms. Finizie's age discrimination claim.

## III.    Conclusion

Ms. Finizie at age sixty-three applied for open positions as an infection control nurse with the Department in June and August 2017. Ms. Finizie last worked as an infection control nurse in 1993. The Department denied her applications and interviewed and selected other candidates with more recent infection control experience. The Department adduces undisputed evidence it required recent infection control experience as a required qualification for the infection control vacancies.

13

Ms. Finizie claims the Department rejected her for these positions in retaliation for her past Equal Employment Opportunity activity in 2015. Ms. Finizie also claims the Department discriminated against her based on her age and gender. We find no genuine issues of fact material to Ms. Finizie's claims. She fails to establish retaliation, age, or gender discrimination under federal law. We enter summary judgment in favor of her former employer Department and dismiss Ms. Finizie's claims under Title VII and the Age Discrimination in Employment Act.

---

[1] Our Policies require a Statement of Undisputed Facts ("SUMF") and appendix in support of summary judgment. Defendant Denis McDonough, Secretary, United States Department of Veterans Affairs (the "Department") filed its SUMF at ECF No. 21-1 ("Department SUMF") and submitted its appendix in support of its motion for summary judgment at EFC No. 21-2. Ms. Finizie responded to the Department's SUMF at ECF No. 22-4 ("Finizie Response to Department SUMF") and attached her appendix in opposition to summary judgment at ECF No. 22-3.

[2] Department SUMF ¶¶ 1–2; Finizie Response to Department SUMF ¶¶ 1–2.

[3] Department SUMF ¶ 2; Finizie Response to Department SUMF ¶ 2.

[4] Department SUMF ¶ 4. Finizie Response to Department SUMF ¶ 4.

[5] Department SUMF ¶¶ 5–6. Finizie Response to Department SUMF ¶¶ 5-6.

[6] Department SUMF ¶¶ 5–6. Finizie Response to Department SUMF ¶¶ 5-6.

[7] ECF No. 21-2 at 266–67.

[8] *Id.*

[9] Department SUMF ¶ 33, 43; Finizie Response to Department SUMF ¶ 33, 43.

[10] Department SUMF ¶¶ 15–16; Finizie Response to Department SUMF ¶¶ 15–16. The parties dispute whether the investigation targeted only Ms. Finizie and co-worker Florence Kocher. But this fact is immaterial to our summary judgment analysis.

[11] Department SUMF ¶ 20; Finizie Response to Department SUMF ¶ 20.

[12] Department SUMF ¶ 21; Finizie Response to Department SUMF ¶ 21.

14

[13] Department SUMF ¶¶ 22–23; Finizie Response to SUMF ¶¶ 22–23.

[14] Department SUMF ¶ 24; Finizie Response to Department SUMF ¶ 24.

[15] Department SUMF ¶ 30, Finizie Response to Department SUMF ¶ 30.

[16] Department SUMF ¶¶ 10, 25, 26; Finizie Response to Department SUMF ¶¶ 10, 25, 26.

[17] Department SUMF ¶¶11, 29; Finizie Response to Department SUMF ¶¶ 11, 29.

[18] Department SUMF ¶¶ 32, 33; Finizie Response to Department SUMF ¶¶ 32, 33. The parties primarily disagree about why the Department screened out Ms. Finizie.

[19] Department SUMF ¶¶ 31, 34; Finizie Response to Department SUMF ¶¶ 31, 34.

[20] Department SUMF ¶ 36; Finizie Response to Department SUMF ¶ 36.

[21] Department SUMF ¶ 37; Finizie Response to Department SUMF ¶ 37.

[22] Department SUMF ¶ 39; Finizie Response to Department SUMF ¶ 39.

[23] Department SUMF ¶ 38; Finizie Response to Department SUMF ¶ 38.

[24] Department SUMF ¶ 40, 43; Finizie Response to Department SUMF ¶ 40, 43.

[25] Department SUMF ¶ 45; Finizie Response to Department SUMF ¶ 45.

[26] ECF No. 21-2 at 69.

[27] Department SUMF ¶ 46; Finizie Response to Department SUMF ¶ 46.

[28] ECF No. 1 ¶ 9.

[29] *Id.* ¶ 11.

[30] ECF No. 1. Ms. Finizie unsuccessfully litigated similar retaliation claims against the Department related to her non-selection for the infection control nurse position. *See, e.g., Finizie v. Sec'y, United States Dep't of Veterans Affairs*, 751 F. App'x 300, 303 (3d Cir. 2018) (affirming Judge Robreno's grant of summary judgment for the Department on Ms. Finizie's retaliation claim); *Finizie v. Shineski*, 351 F. App'x 668, 673 (3d Cir. 2009) (affirming Judge Dalzell's grant of summary judgment for the Department on Ms. Finizie's retaliation claim); *Finizie v. Principi*, 69 F. App'x 571, 575 (3d Cir. 2003) (affirming denial of motion for a new trial following bench trial where Judge Dalzell entered judgment for the Department on Mr. Finizie's retaliation claim); *Finizie v. McDonough*, No. 20-6513 (E.D. Pa. June 17, 2022) (Judge Younge granting summary judgment to the Department on Ms. Finizie's retaliation claim). We

denied Ms. Finizie's retaliation, sex discrimination, and age discrimination on summary judgment last September relating to infection control nurse vacancies in 2018. *See Finizie v. McDonough*, No. 21-5586, 2022 WL 4635876 (E.D. Pa. Sept. 30, 2022).

[31] ECF No. 21. Ms. Finizie opposed summary judgment at ECF No. 22 and the Department replied at ECF No. 23. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[32] EFC No. 21 at 9–23.

[33] ECF No. 22.

[34] ECF No. 1 ¶ 47. She also briefly alleges the Department subjected her to the Administrative Board of Investigation process; moved to a smaller workspace; and gave her a lowered proficiency report. *Id.*

[35] ECF No. 22 at 14.

[36] 42 U.S.C. § 2000e-3(a).

[37] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Egelkamp v. Archdiocese of Phila.*, No. 19-3734, 2021 WL 1979422, at *9 (E.D. Pa. May 18, 2021) (citing *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)).

16

[38] *Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 64 (3d Cir. 2020) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (citation omitted)).

[39] *Carvalho-Grevious*, 851 F.3d at 257 (citing *Moore*, 461 F.3d at 342).

[40] *Id.* (citing *Moore*, 461 F.3d at 342).

[41] *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

[42] *Id.*

[43] *Mulcahy v. Skipper*, No. 21-2788, 2022 WL 3081873, at *2 (3d Cir. Aug. 3, 2022) (internal citations omitted).

[44] ECF No. 21-2 at 266–67.

[45] ECF No. 21 at 11.

[46] *Id.*; *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). The Supreme Court in *Burlington Northern* held the anti-retaliation provision of Title VII covers employer actions considered "materially adverse to a reasonable employee or job applicant." *Id.* This teaching means the employer's actions are harmful to the point where it could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*

[47] *Chambers v. Pennsylvania*, No. 19-2867, 2020 WL 4699045, at *6 (E.D. Pa. Aug. 13, 2020) (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015)).

[48] *Id.* (citing *Daniels*, 776 F.3d at 196).

[49] *Petti*, 831 F. App'x at 64 (quoting *Carvalho-Grevious*, 851 F.3d at 253) (emphasis in original)).

[50] *Mazur v. Sw. Veterans Ctr.*, 803 F. App'x 657, 662 (3d Cir. 2020) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)); *D'Ambrosio v. Crest Haven Nursing & Rehab. Ctr.*, 755 F. App'x 147, 152–53 (3d Cir. 2018).

[51] *D'Ambrosio,* 755 F. App'x at 152–53.

[52] *Id.*

[53] *Id.*

[54] *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018) ("Close 'temporal proximity,' between the protected status or action by the employee and the adverse action by the employer, is suggestive but not determinative of causation." (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

[55] *Petti*, 831 F. App'x at 64.

[56] *Id.*

[57] *Motto v. Wal-Mart Stores E., LP*, 563 F. App'x 160 (3d Cir. 2014).

[58] *Id.*

[59] *Id.* at 163–64.

[60] ECF No. 21 at 13.

[61] ECF No. 21-2 at 266–67.

[62] ECF No. 21 at 14.

[63] *Taylor v. Cherry Hill Bd. of Educ.*, 85 F. App'x 836, 840 (3d Cir. 2004) (quoting *Fuentes*, 32 F.3d at 764).

[64] *Id.*; *see also D'Ambrosio*, 755 F. App'x at 152–53.

[65] *Nunn v. NHS Hum. Servs., Inc.*, 110 F. Supp. 3d 554, 568 (E.D. Pa. 2015).

[66] *James v. Sutliff Saturn, Inc.*, 468 F. App'x 118, 121 (3d Cir. 2012) (internal citations omitted).

[67] *Steele v. Pelmor Lab'ys Inc.*, 642 F. App'x 129, 135 (3d Cir. 2016).

[68] *Id.*

[69] *Id.*

[70] *Id.* (citing *Bray v. Marriott Hotels*, 110 F.3d 986, 999 (3d Cir.1997) (Alito, J., dissenting)).

[71] Department SUMF ¶¶ 10, 38; Finizie Response to Department SUMF ¶¶ 10, 38. (emphasis added).

[72] Department SUMF ¶ 5; Finizie Response to Department SUMF ¶ 5.

[73] Department SUMF ¶ 27; Finizie Response to Department SUMF ¶ 27.

[74] Department SUMF ¶ 34; Finizie Response to Department SUMF ¶ 34.

[75] Department SUMF ¶ 45; Finizie Response to Department SUMF ¶ 45.

[76] *Steele*, 642 F. App'x at 135.

[77] ECF No. 1 at ¶¶ 51–60.

18

[78] Department SUMF ¶¶ 31, 34, 44, 45; Finizie Response to Department SUMF ¶¶ 31, 34, 44, 45.

[79] ECF No. 21 at 17.

[80] ECF No. 21-2 at 230–264.

[81] ECF No. 1 at ¶¶ 61–69.

[82] *Id.* ¶¶ 37, 41; ECF No. 22 at 17.

[83] 29 U.S.C. § 623(a)(1).

[84] *Gress v. Temple Univ. Health Sys.*, 784 F. App'x 100, 104 (3d Cir. 2019).

[85] *Borzak v. City of Bethlehem*, No. 19-5716, 2021 WL 6073095, at *12 (E.D. Pa. Dec. 23, 2021) (internal citations omitted); *see also McDonnell Douglas*, 411 U.S. at 802.

[86] *Id.* (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).

[87] *Gardner v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 21-3422, 2022 WL 3647824, at *8 (E.D. Pa. Aug. 24, 2022). *See also Hartman v. Select Rehab.*, LLC, 528 F. Supp. 3d 373, 384 (E.D. Pa. 2021) (citing *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 301 (3d Cir. 2004)).

[88] *Smith v. City of Allentown,* 589 F.3d 684, 690 (3d Cir. 2009).

[89] *Id.*

[90] Department SUMF ¶¶ 5,27; Finizie Response to Department SUMF ¶¶ 5, 27.

[91] Department SUMF ¶ 10, 26; Finizie Response to Department SUMF ¶ 10, 26.

[92] *Hartman v. Select Rehab.*, LLC, 528 F. Supp. 3d at 384–85.

19