No. 23–2594

======================================================

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————————

SHARON FINIZIE,

*Appellant,*

*v.*

SECRETARY, UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

*Appellee.*

———————————————

APPEAL FROM AN ORDER DATED AUGUST 9 2023, GRANTING
SUMMARY JUDGMENT IN CIVIL ACTION NO. 23–0294,
IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA (HON. MARK A. KEARNEY)

———————————————

## BRIEF OF APPELLEE

———————————————

JACQUELINE C. ROMERO
United States Attorney

GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

COLIN M. CHERICO
Assistant United States Attorney
615 Chestnut St., Suite 1250
Philadelphia, PA 19106

(215) 861-8788

======================================================

# TABLE OF CONTENTS

Statement of Subject Matter Jurisdiction .................................................. 1

Statement of Appellate Jurisdiction........................................................... 1

Statement of the Issues ............................................................................. 2

Statement of Related Cases ...................................................................... 3

Statement of the Case............................................................................... 4

    I.   Relevant factual allegations and background...................................... 4

        A.  The 2017 ICN Vacancy .......................................................... 5

        B.  The 2017 Administrative Investigation Board ........................ 7

    II.  Procedural background and rulings on review ................................. 9

Summary of Argument ............................................................................11

Argument ................................................................................................ 13

    I.  Standard of Review ........................................................................ 13

    II. The district court properly granted summary judgment on Finizie's claims related to the 2017 ICN vacancy................................................. 13

        A.  Finizie does not establish a *prima facie* case for sex or age discrimination. .................................................................................15

        B.  Finizie cannot show that the VA's non-selection of her for the 2017 ICN position was because of retaliation for prior EEO activity................................................................................. 19

    III.....The district court correctly granted summary judgment on Finizie's claims related to the AIB. .............................................................. 31

        A.  Finizie cannot show that the VA established the AIB and moved her office based on a discriminatory motive because she is an older woman........................................................................ 31

        B.  Finizie's retaliation claim with respect to the AIB also fails...34

        C.  The VA's decisions to order the AIB and respond to its conclusions with an Action Plan are valid non-retaliatory business decisions..................................................................................... 35

CONCLUSION.........................................................................................38

CERTIFICATIONS ................................................................................. 39

CERTIFICATE OF SERVICE..................................................................40

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...................................................... 23

*Ansell v. Green Acres Contracting Co.*,
  347 F.3d 515 (3d Cir. 2003) ........................................ 16

*Brewer v. Quaker State Oil Ref. Corp.*,
  72 F.3d 326 (3d Cir. 1995) ........................... 17, 23, 29

*Burton v. Teleflex Inc.*,
  707 F.3d 417 (3d Cir. 2013) ........................................ 24

*Carvalho-Grevious v. Del. State Univ.*,
  851 F.3d 249 (3d Cir. 2017) ...........................20, 26, 30

*Chandler v. Roudebush*,
  425 U.S. 840 (1976) ...................................................... 13

*Corley v. Jackson Police Dep't*,
  639 F.2d 1296 (5th Cir. 1981) ....................................28

*Daniels v. Sch. Dist. of Phila.*,
  776 F.3d 181 (3d Cir. 2015) .......................................28

*DeHart v. Horn*,
  390 F.3d 262 (3d Cir. 2004) .......................................13

*Doucet v. Univ. of Cincinnati*,
  No. 06–4118, 2007 WL 2445993 ................................. 18

*Estate of Smith v. Marasco*,
  318 F.3d 497 (3d Cir. 2003) .......................................23

*Ezold v. Wolf, Block, Schorr & Solis-Cohen*,
  983 F.2d 509 (3d Cir. 1992) ....................................... 27

*Farrell v. Planters Lifesavers Co.*,
  206 F.3d 271 (3d Cir. 2000) ...............................20, 22

*Fercello v. Cty. of Ramsey*,
  612 F.3d 1069 (8th Cir. 2010) ..............................33, 36

*Finizie v. Sec'y, U.S. Dep't of VA*,
  751 F.App'x 300 (3d Cir. 2018) ............................... 27

*Fuentes v. Perskie*,
  32 F.3d 759 (3d Cir. 1994) ................... 17, 23, 24, 26, 29, 30

*Gee v. Principi*,
  289 F.3d 342 (5th Cir. 2002) ....................................28

*Hector v. Mayorkas*,
  2022 WL 616724 (E.D. Va. Mar. 2, 2022) ............. 30

*In re Wettach*,
  811 F.3d 99 *(3d Cir. 2016)* ........................................................ 16
*Jones v. Sch. Dist.* of Phila.,
  198 F.3d 403 (3d Cir. 1999) ........................................... 15, 27
*Kautz v. Met-Pro Corp.*,
  412 F.3d 463 (3d Cir. 2005) .................................................. 29
*Keller v. Orix Credit All., Inc.*,
  130 F.3d 1101 (3d Cir. 1997) .......................... 15, 17, 23, 26, 29
*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) ...................................................... 16
*Krouse v. Am. Sterilizer Co.*,
  126 F.3d 494, 504 (3d Cir. 1997) ........................................ 18, 21
*Lauren W. ex rel. Jean W. v. DeFlaminis*,
  480 F.3d 259 (3d Cir. 2007) ............................................. 20, 22
*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,
  503 F.3d 217 (3d Cir. 2007) ............................................. 19, 21
*Lexington Ins. Co. v. W. Pa. Hosp.*,
  423 F.3d 318 (3d Cir. 2005) ................................................. 31
*Longstreet v. Holy Spirit Hosp.*,
  67 F.App'x 123 (3d Cir. 2003) ............................................. 28
*Mandel v. M & Q Packaging Corp.*,
  706 F.3d 157 (3d Cir. 2013) ................................................. 15
*McCullough v. Kirkum*,
  212 F.App'x 281 (5th Cir. 2006) ..................................... 33, 36
*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ................................................ 13, 14, 24
*Mitchell v. USBI Co.*,
  186 F.3d 1352 (11th Cir. 1999) ............................................. 18
*Moore v. City of Phila.*,
  461 F.3d 331 (3d Cir. 2006) ................................................. 24
*Motto v. Wal-Mart Stores E., LP*,
  563 F.App'x 160 (3d Cir. 2014) ....................................... 21, 34
*Nettle v. Cent. Okla. Am. Indian Health Council, Inc.*,
  334 F.App'x 914 (10th Cir. 2009) ................................... 33, 36
*Parnell v. Stone*,
  12 F.3d 213, 1993 WL 524278 (6th Cir. 1993) ..................... 30
*Petti v. Ocean Cty. Bd. of Health*,
  831 F.App'x 59 (3d Cir. 2020) ............................................. 20

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ............................................................. 28
*Ramara, Inc. v. Westfield Ins. Co.*,
    814 F.3d 660 (3d Cir. 2016) ................................................ 31
*Randle v. City of Aurora*,
    69 F.3d 441 (10th Cir. 1995) ............................................... 18
*Reeves v. Sanderson Plumbing Prods.*,
    530 U.S. 133 (2000) ............................................................ 25
*Sarullo v. USPS*,
    352 F.3d 789 (3d Cir. 2003) ................................................ 27
*Schaffhauser v. UPS*,
    794 F.3d 899 (8th Cir. 2015) .............................................. 18
*Shaner v. Synthes*,
    204 F.3d 494, 506 & n.16 (3d Cir. 2000) ...................... 33, 36
*Simpson v. Kay Jewelers*,
    142 F.3d 639 (3d Cir. 1998) ................................................ 27
*Sperling v. United States*,
    515 F.2d 465 (3d Cir. 1975) ................................................ 13
*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993) ............................................................ 14
*Stites v. Alan Ritchey, Inc.*,
    458 F.App'x 110 (3d Cir. 2012) .......................................... 21
*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S. 248 (1981) ............................................................ 13
*Thomas v. Town of Hammonton*,
    351 F.3d 108 (3d Cir. 2003) ................................................ 20
*Trevino v. Wheeler*,
    2022 WL 3645912 (N.D. Ill. Aug. 24, 2022) ...................... 30
*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ............................................................ 25
*Williams v. Phila. Hous. Auth. Police Dep't*,
    380 F.3d 751 (3d Cir. 2004) ................................................ 20

**Statutes**

28 U.S.C. § 1291 ....................................................................... 1
28 U.S.C. § 1331 .................................................................... 1, 6
42 U.S.C. § 2000e-16 ................................................................ 1
42 U.S.C. § 2000e-5 .................................................................. 1

## STATEMENT OF SUBJECT MATTER JURISDICTION

The district court had subject matter jurisdiction over this action because it arose under the federal sector provisions of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-5(f)(3); 42 U.S.C. § 2000e-16(d); 28 U.S.C. § 1331.

## STATEMENT OF APPELLATE JURISDICTION

Sharon Finizie appeals from the district court's August 9, 2023 order that granted summary judgment in favor of the Secretary of the United States Department of Veterans Affairs (VA) and dismissed Finizie's complaint with prejudice. Based on Finizie's timely notice of an appeal, this Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Did the district court correctly grant summary judgment in favor of the VA on Finizie's claims that VA officials discriminated against her and did not select her for a position because of her sex or age?

2.    Did the district court correctly grant summary judgment in favor of the VA on Finizie's claims that VA officials retaliated against her and did not select her for a position because of her prior Equal Employment Opportunity (EEO) activity?

3.    Did the district court correctly grant summary judgment in favor of the VA on Finizie's claims that VA officials initiated an Administrative Investigation Board against Finizie because of her age, sex, or prior EEO activity?

## STATEMENT OF RELATED CASES

Before this case, Finizie filed at least fifteen federal complaints that also alleged discrimination or retaliation by the VA,[1] and she appealed at least nine prior district court decisions in those cases to this Court.[2]

The VA is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court, or any other court or agency, state or federal.

---

[1] *Finizie v. West*, Civ. No. 98–3326 (E.D. Pa.); *Finizie v. West*, Civ. No. 99–6426 (E.D. Pa.); *Finizie v. West*, Civ. No. 00–3268 (E.D. Pa.); *Finizie v. Principi*, Civ. No. 01–2008 (E.D. Pa.); *Finizie v. Principi*, Civ. No. 03–4437 (E.D. Pa.); *Finizie v. Principi*, Civ. No. 04–2805 (E.D. Pa.); *Finizie v. Principi*, Civ. No. 04–4530 (E.D. Pa.); *Finizie v. Nicholson*, Civ. No. 06–2135 (E.D. Pa.); *Finizie v. Nicholson*, Civ. No. 06–4569 (E.D. Pa.); *Wadhwa (and Finizie) v. Nicholson*, Civ. No. 07–2750 (E.D. Pa.); *Wadhwa (and Finizie) v. Nicholson*, Civ. No. 07–3301 (E.D. Pa.); *Wadhwa (and Finizie) v. Nicholson*, Civ. No. 09–2602 (E.D. Pa.); *Finizie v. McDonald*, Civ. No. 15–2050 (E.D. Pa.); *Finizie v. Wilkie*, Civ. No. 20–6513 (E.D. Pa.); *Finizie v. McDonough*, Civ. No. 21–5586 (E.D. Pa.).

[2] *Finizie v. Principi*, No. 02–3588 (3d Cir.); *Finizie v. Sec'y of VA*, No. 08–2835 (3d Cir.); *Wadhwa (and Finizie) v. Nicholson*, No. 08–3321 (3d Cir.); *Wadhwa (and Finizie) v. Nicholson*, No. 09–2530 (3d Cir.); *Wadhwa (and Finizie) v. Nicholson*, No. 09–3555 (3d Cir.); *Wadhwa (and Finizie) v. Sec'y Dep't of VA*, No. 10–2270 (3d Cir.); *Finizie v. Sec'y U.S. Dep't of VA*, No. 17–3624 (3d Cir.); *Finizie v. Sec'y U.S. Dep't of VA*, No. 22–2292 (3d Cir.); *Finizie v. Sec'y U.S. Dep't of VA*, No. 23–1417 (3d Cir.).

## STATEMENT OF THE CASE

### I.    Relevant factual allegations and background

From about February 1981 to May 1993, Finizie worked at the Philadelphia Veterans Affairs Medical Center (Philadelphia VAMC) as an infection control nurse (ICN). *See* SAppx002–003, (Finizie Dep. Tr. at 6:24–7:3).[3] In May 1993, the VA removed Finizie from her ICN position because of serious deficiencies in her job performance. SAppx117, (Detail Letter dated May 10, 1993).[4] Until she retired in October 2018, the VA reassigned Finizie to a Quality Management Specialist position at the Philadelphia VAMC. SAppx003, (Finizie Dep. Tr. at 7:4-12). Thus, after May 1993, Finizie never again worked as an ICN. SAppx003, (Finizie Dep. Tr. at 7:10-12).

Nonetheless, during the next 25 years, Finizie regularly applied for ICN positions each time a vacancy appeared, and when the VA failed to select her for an ICN position, she filed an EEO complaint. SAppx003-004,

---

[3] "SAppx" citations refer to pages of the VA's Supplemental Appendix. Unless otherwise indicated, parenthetical citations refer to the page and line numbers of the original records.

[4] "A" citations refer to pages of the Appendix filed by Finizie. Unless otherwise indicated, parenthetical citations refer to the page and line numbers of the original records.

(Finizie Dep. Tr. at 7:22-8:20). And when Finizie's EEO complaints were denied, she regularly filed a federal lawsuit against the VA.[5]

Before the issues this case, Finizie had last filed an EEO complaint in 2015 relating to her non-selection for an ICN vacancy that year.

### A.  The 2017 ICN Vacancy

On June 6, 2017, the VA posted a vacancy for an ICN. SAppx083-087, (June 2017 Vacancy Announcement). The posting listed the following Preferred Qualifications:

1. Infection Control Practitioner Certification;
2. Current infection control experience in a tertiary care facility;
3. Demonstrated ability to gather, track, analyze and interpret data;
4. Knowledge and skills to perform surveillance; and
5. Demonstrated ability to provide related education to interdisciplinary members of the healthcare team.

SAppx084-085, (June 2017 Vacancy Announcement). These preferred qualifications are taken from the VA's Functional Statement, a description of what an ICN does, for the infection control nurse position. SAppx096-102, (Functional Statement/Performance Standards for Infection Control Nurse). Finizie admits she had not worked in infection control since 1993—24 years before this position opened. SAppx003, (Finizie Dep. Tr. at 7:2-

---

[5] *See* district court cases and related appeals cited in notes 1 and 2, above.

12). Finizie applied for this position on June 16, 2017. SAppx104, (Report of Investigation dated March 7, 2018 at 2).

Human Resources Specialist Stephen Hilleary drafted this posting and selected the preferred qualifications criteria by referencing the Functional Statement for an ICN position. A129-130, (Hilleary Aff.); SAppx096-102, (Functional Statement/Performance Standards for Infection Control Nurse). Philomena Rego, a Health System Specialist in Quality Management, preliminarily screened the initial applicant pool for individuals who met the preferred qualifications. SAppx066-072, (Rego Aff.). She looked for applicants who had both the IC Certification and current infection control experience. *Id*. Rego passed three qualified names on to Boxer, who convened a three-person interview panel. *Id*. Sharon Alexander, Suzanne Fritz, and Darren Linkin served on the interview panel. SAppx060, (Boxer 2018 Aff., pg. 3).[6] Eventually the interview panel recommended Jenny Hayes for the position, though Hayes ultimately did

---

[6] Sharon Alexander and Susan Fritz were nurses at the VA during 2017. Both had served as ICN nurses at the Philadelphia VA and were chosen for those ICN positions over Finizie and other applicants, leading Finizie to file lawsuits alleging retaliation. These allegations were dismissed by Judge Younge in his opinion dated June 17, 2022. SAppx119. Darren Linkin is a doctor at the Philadelphia VAMC.

not accept it. Therefore, the VA still needed to fill the ICN vacancy. SAppx114, (Report of Investigation, USVA00729).

On August 3, 2017, the Philadelphia VA posted a new vacancy announcement for the ICN position that it had failed to fill with the June vacancy announcement. SAppx088-095, (USA Jobs Announcement 1994947). In other words, this new posting was for the same ICN position to which Finizie applied in July and that Hayes eventually did not accept. Nurse Mary Fornek, who had current infection control experience, applied for the vacancy and the VA selected her for the position due to her relevant experience. *See* SAppx063-064, (Boxer 2018 Aff. pgs. 6-7).

### B.    The 2017 Administrative Investigation Board

Finizie alleges that in 2017, VA management ordered an Administrative Investigation Board (AIB) because Finizie and her co-worker, Florence Kocher, had engaged in unprofessional behavior.

VA leadership can request an AIB to get an objective, outside evaluation of a challenging situation. SAppx030-31, (LaPointe Dep. Tr. at 53:19-54:1). Robert LaPointe, the interim director of the Philadelphia VA Quality Management Department (QM) from April 2016 through March 2017, faced several challenges managing QM personnel, including Finizie

and Kocher's relationships with co-workers. SAppx079-80, (LaPointe AIB Dep. Tr. at 14:22-15:23).

In February 2017, Daniel Hendee, the Philadelphia VAMC Director, convened an AIB, comprised of three employees who worked for the Wilkes-Barre VA medical center (about two hours from the Philadelphia VA). A100 (AIB Charge Letter). The AIB members included Valerie Boytin (Nurse Executive), Terry Milbrodt (Compliance Officer) and Antoinette Germain-Tudgay (Quality Manager). The AIB interviewed many QM employees, including Finizie, Kocher, Peter Leporati, and LaPointe. Eventually, the members issued a report with findings of fact. Significantly, they concluded that: (1) Finizie and Kocher had collaborated together against other QM employees. A101-105 (AIB Findings of Fact, Conclusion 3); and (2) Finizie and Kocher's credibility could not be trusted. *Id.* (Conclusion 7).

As the AIB concluded its investigation, Dr. Bruce Boxer assumed the leadership of the QM Department, replacing LaPointe. Based upon the AIB's findings, the VA developed an action plan to allow the QM division to move forward productively. Primarily, Boxer moved Finizie and Kocher to different locations, that would be less disruptive to other employees.

8

SAppx054, (Boxer 2017 Aff. pg. 6). The move resulted in Finizie having a smaller office space, Finizie moved to or compare it with other offices before making the decision. *Id.* When Boxer advised Kocher and Finizie about the AIB conclusions, he met with them alone outside the presence of other QM employee together to avoid embarrassing them in front of their colleagues. SAppx052, (Boxer 2017 Aff. pg. 4).

## II.  Procedural background and rulings on review

In June 2017, Finizie initiated an EEO complaint asserting that the VA's decision to reassign her office as per the AIB's recommendation was due to discrimination and retaliation. In November 2017, Finizie filed a separate EEO complaint contending that the VA's decision to select other nurses for the 2017 ICN vacancy due also due to discrimination and retaliation. *See* SAppx104, (Report of EEO Investigation at 2).

On October 31, 2022, the EEOC affirmed the agency's final decision denying discrimination or retaliation.

Appellant filed her present complaint on January 24, 2023 alleging that the VA's action when (a) following the AIB's recommendations, and (b) selecting another nurse for the 2017 ICN vacancy were discriminatory (age and sex) and retaliatory. A046-053, (Complaint).

Following discovery, the VA moved for summary judgment, which Finizie opposed. A055-099. On August 10, 2023, the district court granted summary judgment in favor of the VA and dismissed Finizie's complaint. A024-042. The district court held that Finizie had failed to provide any evidence indicating that she was not selected for the 2017 ICN vacancy based on retaliation for prior EEO activity or because of her sex or age. The district court made similar findings with respect to the VA's decision to follow the AIB's recommendations and move Finizie to an office further away from Florence Kocher. *Id.* The district court also stated that Finizie had failed to establish a causal connection between her protected activity and the allegedly adverse employment actions. *Id.* Finally, it held that Finizie had offered no evidence other than her own subjective beliefs, which could not establish either a prima facie case or establish that the VA's non-discrimination reasons for not selecting her were pretext for retaliation. *Id.*

On September 5, 2023, Finizie noticed an appeal of that decision. A001 (Notice of Appeal).

10

# SUMMARY OF ARGUMENT

The district court correctly granted summary judgment in favor of the VA on Finizie's claims that the VA discriminated and retaliated against her when conducting the 2017 Administrative Investigation Board (AIB) and in not selecting her for an ICN vacancy in 2017.

Finizie's opening brief does not develop her claims that the VA's non-selection was the result of discrimination based on of her sex or age and fails to present a *prima facie* case. Instead she argues that the hiring process was "arbitrary and capricious," and that she should have received "first consideration" for ICN positions under her union's collective bargaining agreement. *See* Br. at 19–22. But those arguments fail to state a claim of sex or age discrimination.

Finizie's retaliation claims also fail because she cannot show a causal connection between her prior EEO activity and the VA's decisions that she is complaining about in this case: specifically the VA's decision to follow the AIB's recommendation and the VA's selection of other nurses for the 2017 ICN vacancy.[7] Additionally, Finizie cannot rebut as pretextual the VA's

---

[7] Finizie claims that she was passed over for two vacancies during 2017, but that characterization is inaccurate. The VA did not fill the ICN vacancy that (continued)

legitimate non-discriminatory reasons for not selecting Finizie, including

its requirement that the ICN hires have recent infection control experience,

which Finizie admits she did not have.

---

opened in June, and therefore reposted the position in August. Finizie
applied both times and was neither interviewed nor selected, but there was
only one infection control nurse position open in June and August of 2017.
The VA's selection in August also did not accept the position and the ICN
position advertised remained vacant until 2018.

## ARGUMENT

## I.     Standard of Review

This Court's review of a grant of summary judgment is plenary and employs the same standard as the district court, but it "must affirm if the record evidence submitted by the non-movant is merely colorable or is not significantly probative." *DeHart v. Horn*, 390 F.3d 262, 267-68 (3d Cir. 2004). Following the EEOC's rejection of Finizie's claims, federal courts review them *de novo*, but may consider evidence from the administrative record. *Chandler v. Roudebush*, 425 U.S. 840, 863 n.39 (1976); *Sperling v. United States*, 515 F.2d 465, 484 (3d Cir. 1975).

## II.    The district court properly granted summary judgment on Finizie's claims related to the 2017 ICN vacancy.

The burden of proof in discrimination cases is generally allocated according to the test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Here, Finizie has the initial burden of showing actions taken by the VA from which one may infer that it is more likely than not such actions were based on discriminatory or retaliatory criteria. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). If a *prima facie* case of discrimination has been established, the burden shifts to the VA to articulate a legitimate, non-discriminatory reason for the challenged

13

action. *Burdine* at 253–54; *McDonnell Douglas* at 802. Finizie may then show that the legitimate reason offered by the VA was not the true reason, but merely a pretext for discrimination or retaliation. *Burdine* at 256. *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

Here, Finizie cannot show even a *prima facie* case that the VA discriminated against her based on her sex or age when it selected a different female nurse for the 2017 ICN vacancy. And with respect to her retaliation claim, Finizie cannot genuinely show either the required causal connection between her EEO activity and her non-selection for an ICN vacancy in 2017, or that the VA's legitimate, nondiscriminatory reasons for selecting better qualified nurses than Finizie were a pretext for retaliation. The Court should therefore affirm the grant of summary judgment for the VA with respect to her non-selection claim.

## A.    Finizie does not establish a *prima facie* case for sex or age discrimination.

To establish a *prima facie* case of sex discrimination under Title VII based a non-selection, Finizie must establish that (1) she belongs to a protected class, (2) she was qualified for the position, (3) the VA took an adverse employment action against her, and (4) the circumstances give rise to an inference of unlawful discrimination—which can be established by showing that similarly situated individuals who were not members of the protected class were treated more favorably than Finizie. *See Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 169 (3d Cir. 2013); *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 410–11 (3d Cir. 1999). Likewise, to establish a *prima facie* case of age discrimination, Finizie must establish that (1) she was a member of the protected class (*i.e.*, 40 years of age or older), (2) she was not selected for the position, (3) she was qualified for the position, and (4) a sufficiently younger person was selected to create an inference of age discrimination. *See Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997).

Finizie's opening brief on appeal does not identify or develop any arguments that would support a *prima facie* claim of either sex or age discrimination. Finizie vaguely asserts that the ICN position was offered to

other women in their 30s or 40s. *See* Br. at 8–9. But she makes no argument that the VA selected these other women for the ICN position for a discriminatory reason because of Finizie's sex or age.[8] *See* Br. at 19–22. And her failure to develop a cognizable *prima facie* case has therefore forfeited any sex or age discrimination claims. *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016); *Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3d Cir. 1993).

Moreover, instead of attempting to establish a *prima facie* case of sex or age discrimination, Finizie merely argues that a jury could find that the VA's selection criteria for the 2017 ICN vacancy was "arbitrary and capricious," that the VA considered the wrong criteria in making hiring decisions, and that a jury could infer discrimination by comparing Finizie's (self-assessed) qualifications for the ICN position against the qualifications of the individuals ultimately selected, or by accepting Finizie's various criticisms of the VA's hiring processes. *See* Br. at 19–20.

---

[8] Indeed, Finizie cannot dispute that every candidate the VA interviewed and selected for ICN positions was, like her, female, including all who were screened and passed to the interview panel for the 2017 vacancy. *See* A117 (Non-Competitive Candidate Referral List). *See Ansell v. Green Acres Contracting Co*., 347 F.3d 515, 524 (3d Cir. 2003) (employer's favorable treatment of other members of same protected class can create an inference that the employer *lacks* discriminatory intent).

16

But Finizie's purported disputes are irrelevant to her claims of discrimination because a federal court may not decide whether the VA made the correct choice in selecting someone other than Finizie. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination. *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997); *accord Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (federal courts do not sit as a "super-personnel department that reexamines an entity's business decisions."); *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (plaintiff cannot simply show that the employer's decision was wrong or mistaken, the factual dispute is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent).

Finally, Finizie argues that a jury could question the VA's motives in not selecting her for the ICN position based on a purported violation of a collective-bargaining agreement (CBA) between the VA and Finizie's union, which Finizie argues required the VA to give her "first consideration" for any ICN positions. Br. at 9–10, 21–22. But Finizie has not sued her union or otherwise asserted claims for breach of a CBA; and apart from Finizie's

17

subjective opinion, there is no evidence suggesting that the VA violated the CBA, much less any evidence that the VA did so for a discriminatory purpose. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir. 1997). And even if Finizie could show the VA should have given her "first consideration," a deviation from an applicable policy does not raise an inference of discrimination or establish pretext. *See EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996); *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355–56 (11th Cir. 1999); *Doucet v. Univ. of Cincinnati*, No. 06–4118, 2007 WL 2445993, *5 (6th Cir. Aug. 28, 2007). That is, "even if the employer's acts are unfair, there has to be evidence connecting the unfairness to a discriminatory animus," *Schaffhauser v. UPS*, 794 F.3d 899, 904 (8th Cir. 2015), and "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995).

**B.    Finizie cannot show that the VA's non-selection of her for the 2017 ICN position was because of retaliation for prior EEO activity.**

To establish a prima facie case of retaliation, Finizie must show that: (1) she engaged in protected activity; (2) the VA took a materially adverse action against her after the protected conduct; and (3) there was a causal connection between the protected activity and the adverse employment action. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 231-32 (3d Cir. 2007). Finizie cannot meet this standard.

**1.    Finizie cannot establish show a causal connection between her EEO activity and her non-selection.**

For purposes of summary judgment, the VA does not dispute that before the VA chose another nurse for the 2017 ICN vacancy, Finizie had made numerous prior EEO claims related to previous non-selections, or that the VA's decision would constitute an adverse personnel action.

On causation, however, Finizie has altogether failed to raise a triable dispute connecting her prior EEO activity to the 2017 non-selection. Specifically, she has not genuinely shown: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; (2) a pattern of antagonism coupled with timing to establish a causal link; or (3) that, in the absence of such proof, the trier of

19

fact should infer causation from the evidence gleaned from the record as a whole. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

### a.    The timing is not unduly suggestive.

Temporal proximity between protected activity and an adverse action is not alone sufficient unless the timing is "unusually suggestive." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

Here, while not alleged in her complaint or argued in her brief, Finizie's retaliation claims appear to rely on: (1) the time between her prior 2012 and 2015 EEO filings (concerning previous non-selections) and the VA's non-selection of her for the 2017 vacancy. But this two-year gap, standing alone, is insufficient to establish prima facie causation. *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 261 n.8 (3d Cir. 2017) ("an intervening temporal period of two days may raise the inference of causation" but "a period of two months cannot."); *see also, e.g.*, *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (three-week gap insufficient); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two-month gap insufficient); *Tirk v. Dubrook, Inc.*, 673 F.App'x 238, 241 (3d Cir. 2016) (one-month gap insufficient); *Petti v.*

*Ocean Cty. Bd. of Health*, 831 F.App'x 59, 64 (3d Cir. 2020) (six-month gap insufficient); *Motto v. Wal-Mart Stores E., LP*, 563 F.App'x 160, 163 (3d Cir. 2014) (an eleven-day gap is not unusually suggestive).

Additionally, while Finizie appears to suggest that a jury could instead infer retaliation based on her two-decade-long history of making prior EEO complaints, those even-more-remote-in-time complaints could not satisfy the "unusually suggestive" requirement for causation. *See Stites v. Alan Ritchey, Inc.*, 458 F.App'x 110, 112 (3d Cir. 2012) (where plaintiffs had complained numerous times over the course of several years of employment, any proximity between complaints and adverse actions was, at most, "merely coincidental," and far from "unusually suggestive.").

### b.    There was no intervening antagonism.

When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir. 1997). But if the plaintiff cannot show that the relationship in question became "qualitatively different" after the protected activity, she cannot meet her burden with this factor. *LeBoon*, 503 F.3d at 232-33.

Here, Finizie does not allege or argue that her continued employment at the Philadelphia VAMC became qualitatively different after she filed her EEO complaints. Indeed, Finizie did not file complaints about other aspects of her employment until the present complaint, in which she added claims related to the AIB. Prior to this complaint she filed EEO complaints only when the VA selected others for ICN vacancies. *See* SAppx003-004, (Finizie Dep. Tr. at 7:22-8:24). *Cf. Koslosky v. Am. Airlines, Inc.*, No. 20–2081, 2022 WL 4481537, *2 (3d Cir. Sept. 27, 2022) (plaintiff failed to identify anything during two-month period after she filed a discrimination complaint that would suggest anyone was resentful).

### c.  The broad array of record evidence as a whole does not support inferring causation.

In the absence of unduly suggestive temporal proximity and intervening antagonism, "the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Lauren W.*, 480 F.3d at 267 (quoting *Farrell*, 206 F.3d at 281). Here, the "broad array" of record evidence, viewed as a whole, does not raise the required inference of retaliation.

Finizie suggests a jury could find retaliation by (1) comparing Finizie's (self-assessed) qualifications for the ICN positions versus the qualifications

22

of the individuals ultimately selected, or (2) by accepting Finizie's various criticisms of the VA's hiring processes. *See* Br. at 19–22.

But again, such purported disputes are irrelevant to Finizie's claims of retaliation because a federal court may not decide whether the VA made the correct choice in selecting someone other than Finizie. "The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [retaliation]." *Keller*, 130 F.3d at 1109; *accord Brewer*, 72 F.3d at 332 (federal courts do not sit as a "super-personnel department that reexamines an entity's business decisions."); *Fuentes*, 32 F.3d at 765 (plaintiff cannot simply show that the employer's decision was wrong or mistaken, the factual dispute is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent).

Finizie otherwise offers no record evidence in support of her retaliation claim. Rather, she merely suggests that, drawing all inferences in her favor, a jury could believe her factual allegations. This suggestion, however, does not constitute affirmative evidence. *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986) (mere allegations cannot defeat

summary judgment).

Viewed as a whole, the record evidence leads only to the conclusion that Finizie cannot show a causal connection.

> **d. The VA had a legitimate, nondiscriminatory reason for not selecting Finizie: her lack of current infection control experience.**

If the employee establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). The defendant may satisfy this "relatively light" burden by articulating any legitimate reason for its action. *Fuentes*, 32 F.3d at 763; *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

Here, even had Finizie met her *prima facie* burden, the VA articulated a legitimate, nondiscriminatory reason for not selecting her for the 2017 ICN vacancy: Finizie's admitted lack of current infection control experience.

Twice during 2017 the VA chose candidates who more clearly met the articulated criteria for the ICN position, including having recently worked in an infection control position. *See* SAppx009, (Finizie Dep. Tr. at 34:3-

24

20). Finizie concedes that the vacancy announcements included current infection control experience as a preferred criterion. SAppx008, (Finizie Dep. Tr. at 34:3-20); SAppx010-011, (*id.* 35:23-36:4). And while Finizie disputes the validity of the current experience requirement, she admits that she had not worked in infection control since 1993, and that she therefore lacked current experience when applying for the 2017 ICN vacancy. *See* SAppx005, (Finizie Dep. Tr. at 10:12-15). Finizie cannot show that the VA's legitimate, nondiscriminatory reason for not selecting her is a pretext for retaliation.

Because the VA proffered a legitimate, nondiscriminatory reason for its actions, any presumption of retaliation arising from a prima facie case collapsed. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000). It was then Finizie's summary judgment burden to do two things. First, she had to cite sufficient evidence to create a triable dispute that the VA's stated reasons were a pretext for retaliation. *Id.*; *see also Burdine*, 450 U.S. at 253 ("the ultimate burden of persuading the trier of fact that the defendant [retaliated] against the plaintiff remains at all times with the plaintiff"). Second, she had to cite genuine evidence that retaliation was the real reason (the "but-for" cause) for the VA's decisions to not select her. *Univ. of*

25

*Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *Carvalho-Grevious*, 851 F.3d at 257-59. Finizie, however, failed to carry her summary judgment burden on both pretext and causation.

### a.    Finizie cannot show that the VA's explanation is false and a pretext.

To discredit the VA's proffered reasons, Finizie had to point to record evidence: (1) demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the VA's] proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence," *Fuentes*, 32 F.3d at 765; (2) allowing the factfinder reasonably to infer that "each of [the VA's] proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action," *id.* at 764; and (3) showing "not merely that [the VA's] proffered reason was wrong, but that it was so plainly wrong that it cannot have been [the VA's] real reason." *Keller*, 130 F.3d at 1109. Finizie has not met this standard.

Finizie largely argues that a jury could find that the VA's decision to choose another nurse for the 2017 ICN vacancy was retaliatory because, despite her admitted lack of current infection control experience, she was (in her own assessment) the only fully qualified in-house candidate to

26

apply. Br. at 13–14. But this argument would not show pretext because an employer "is not required to prove that those promoted are 'better qualified' than the plaintiff." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 n.21 (3d Cir. 1992). "More than a denial of promotion as a result of a dispute over qualifications must be shown to prove pretext." *Id.* at 523. Thus, Finizie's own, subjective belief that she possessed superior qualifications to the candidates ultimately selected for the positions is insufficient to show pretext. *See Sarullo v. USPS*, 352 F.3d 789, 800 (3d Cir. 2003)*; Jones*, 198 F.3d at 412. Moreover, even evidence of "superior" qualifications, in relation to a competitor's, does not create a genuine issue of material fact concerning pretext. *Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir. 1998); *Ezold*, 983 F.2d at 528.

Finizie also disagrees with the VA's recent-experience requirement for the 2017 vacancy, as well as the other standards the VA used to assess candidates for those positions. But Finizie offers no evidence to suggest that the VA applied these criteria—which the VA applied to all potential ICN candidates—as a pretext for retaliation against Finizie for her prior EEO activity. To the contrary, the VA's use of subjective criteria to decide which candidates to rank higher and to select for interviews would not establish

pretext. *See Finizie v. Sec'y, U.S. Dep't of VA*, 751 F.App'x 300, 303 (3d Cir. 2018); *Longstreet v. Holy Spirit Hosp.*, 67 F.App'x 123, 126 (3d Cir. 2003) (where there is ambiguity about the level of experience required for a position, deference should be given to the employer doing the hiring in making those sometimes difficult decisions); *see also, e.g.*, *Elliott v. Acosta*, 291 F.Supp.3d 50, 61-62 (D.D.C. 2018) (selecting official's subjective preference for recent experience over dated experience is not suggestive of retaliation).

Moreover, the focus in a retaliation case is on the knowledge and motive of the decisionmaker, not others. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 197 (3d Cir. 2015) (rejecting argument that retaliation could be shown through secondary knowledge of prior complaints); *Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002) (whether an adverse employment action was the result of retaliation focuses on the final decisionmaker); *Corley v. Jackson Police Dep't*, 639 F.2d 1296, 1300 n.6 (5th Cir. 1981) (employer's attorney's knowledge of prior complaints is not evidence of retaliatory intent); *see also Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring in the judgment) ("[S]tatements by nondecisionmakers, or statements by decisionmakers

unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden…"). Here, Boxer made decisions related to the 2017 ICN vacancies and was a new director of QM; he had not developed any animus against Finizie during the Spring and Summer of 2017. SAppx058-059.

Undoubtedly, Finizie disagrees with the VA's selection of other candidates, whom she personally believes were less qualified than she was for the positions. But a federal court does not "sit as a super-personnel department that reexamines an entity's business decisions." *Brewer*, 72 F.3d at 332. Again, it is not enough for Finizie to show that the VA's decision may have been wrong, unfair, or mistaken "since the factual dispute is whether discriminatory animus motivated the employer's decision, not whether the employer is wise, shrewd, or competent." *Fuentes*, 32 F.3d at 765; *Keller*, 130 F.3d at 1109 ("The question is not whether the employer made the best or even a sound business decision; it is whether the real reason is [retaliation]."). Instead, to establish pretext, Finizie must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). She must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong

29

that it cannot have been the employer's real reason." *Keller*, 130 F.3d at 1109. Proving pretext thus "places a difficult burden on plaintiff." *Fuentes*, 32 F.3d at 765.

### b. Finizie cannot show that retaliation was the real, but-for cause of her non-selections.

In *Nassar*, the Supreme Court affirmed a strict "but-for" causation standard for retaliation claims, replacing a "motivating-factor" standard. *Nassar*, 530 U.S. at 360; *see also Carvalho-Grevious*, 851 F.3d at 256-59.

Here, Finizie acknowledges that she has no record evidence that would support a conclusion that the real, but-for reason that the VA did not select her for the 2017 ICN vacancy was retaliation for her prior EEO activity. Rather, she relies on the mere existence of her many prior EEO complaints, and her own conjecture that VA officials acted out of retaliation for them when not selecting her in 2017. *See* Br. at 22–23. But mere general knowledge or awareness by VA employees of Finizie's many prior EEO complaints is not enough to suggest a retaliatory motive or establish pretext regarding a specific employment decision. *See Parnell v. Stone*, 12 F.3d 213, 1993 WL 524278, at *5 (6th Cir. 1993); *Trevino v. Wheeler*, 2022 WL 3645912, at *7 (N.D. Ill. Aug. 24, 2022); *Hector v. Mayorkas*, 2022 WL 616724, at *7 (E.D. Va. Mar. 2, 2022). And Finizie's own speculation,

conjecture, and unsupported beliefs are insufficient to defeat summary

judgment. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir.

2016); *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir.

2005).

**III.    The district court correctly granted summary judgment on Finizie's claims related to the AIB.**

**A.    Finizie cannot show that the VA established the AIB and moved her office based on a discriminatory motive because she is an older woman.**

Finizie's claim of sex and age discrimination with respect to the AIB

also fails. It is unclear whether Finizie complaints relate to the VA's mere

establishment of the QM Department AIB, or the decisions made by QM

management following the AIB's recommendations.

The Philadelphia VA's management, with input from the QM

Department leadership, decided that QM needed an outside evaluation of

certain unprofessional behaviors among various departmental employees.

SAppx030-032, (LaPointe Dep. Tr. at 53:12-55:9). The AIB was not

directed solely against Finizie or Kocher, but rather evaluated department-

wide conduct. A100, (Charge Letter); SAppx039, (Finizie Aff. pg. 5).[9]

_____

[9] Finizie's counsel noticed Florence Kocher's deposition and the deposition occurred on July 11, 2023. Kocher is represented in various EEO matters by (continued)

31

Indeed, both male and female QM members (Leporati, Kocher, and Finizie) had received written counseling concerning various incidents in the fall of 2016 prior to the VA leadership establishing the AIB in February 2017. A100, (Charge Letter).

In April 2017, the AIB issued its report which cast the Department, Kocher and Finizie in an unflattering light. A101-107, (AIB Findings of Fact). While the AIB concluded that Finizie had collaborated with Kocher against other employees and that Finizie's testimony "lacked credibility," the same AIB report also concluded that another QM employee's use of profane language was detrimental to the department's proper functioning. *Id.* The AIB recommendations only mentioned Finizie by name in two of its eight conclusions, and one other conclusion referenced her as a victim of unprofessional behavior without mentioning her name. *Id.*

Finizie also complains that the AIB's conclusions led to her being discriminated against based upon her sex and age. But Boxer's only action

---

the same counsel as Finizie. Kocher expressed that the AIB was targeted against her and Finizie. But when asked repeatedly to explain the basis for this statement, Kocher could offer nothing but her "perception" that she and Finizie had been targeted. SAppx023-026, (Kocher Dep. Tr. at 152:13-155:10).

towards Finizie after the AIB was to move her desk to a new office away from Kocher.

Relocating an employee's workstation is not, by itself, a materially adverse employment action that would support a discrimination claim. *See, e.g.*, *Shaner v. Synthes*, 204 F.3d 494, 506 & n.16 (3d Cir. 2000); *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1078–79 (8th Cir. 2010); *Nettle v. Cent. Okla. Am. Indian Health Council, Inc.*, 334 F.App'x 914, 926 (10th Cir. 2009); *McCullough v. Kirkum*, 212 F.App'x 281, 285 (5th Cir. 2006).

Moreover, Finizie claims her new office space was inferior and that her desk was a "shelf." SAppx014-015, (Finizie Dep. Tr. at 72:13-73:10). But she presented no evidence about how other individual's office spaces differed from hers. She claims that all male employees had their own offices, SAppx019, (Finizie Dep. Tr. at 81:3-5), but this is untrue and unsupported by the record. SAppx019-20, (Finizie Dep. Tr. at 81:23-82:13). Finizie also offers no comparators for her age discrimination claim; several women who allegedly received preferential treatment from management (Patricia Simon and Lenore Yarrow) were virtually the same age as Finizie. SAppx022, 027, (Kocher Dep. Tr. at 133:14-19, 164:2-18).

33

Even if Finizie could establish a *prima facie* case that she was treated differently because of her age or sex related to the AIB, the VA has legitimate non-discriminatory reasons for Dr. Boxer's actions after receiving the AIB report. SAppx051-054, (Boxer 2017 Aff. at pgs. 3-6). QM employee Suzanne Fritz asked to have her workspace moved to a less toxic workspace because of certain interactions between department members. A101-107, (AIB Findings of Fact); SAppx069-071, (Fritz AIB Dep. Tr. at 8:1-20). QM employee Peter Leporati also asked to move offices after his negative interaction with Kocher. SAppx079-080, (LaPointe AIB Dep. Tr. at 14:22-15:12). Finizie did not like moving to a new workspace, but Boxer's decision merely executed the action plan the VA reasonably developed based upon the AIB's conclusions. Finizie may have disagreed with this decision, but she adduces no evidence to suggest the VA moved her office to discriminate based on her age or sex.

## B. Finizie's retaliation claim with respect to the AIB also fails.

As noted above, to establish a *prima facie* retaliation claim based on the AIB, Finizie must show a causal connection between the actions she complains of and her prior EEO activity. She cannot.

There is no questionable timing between Finizie's prior EEO activity and either the VA establishing the AIB or the AIB reaching its conclusions. Again, even short periods of time between protected activity and alleged adverse actions are insufficient to suggest a causal connection. *See Motto*, 563 F.App'x at 164 (eleven-day period not unusually suggestive of retaliation). Before the events related to the AIB, Finizie had last filed an EEO complaint in 2015, nearly two years before the VA's 2017 decision to have an AIB evaluate the QM Department. While some VA personnel may have generally known of Finizie's lengthy history of EEO complaints, Dr. Boxer had only arrived at the VA in February and become Quality Management Division Director in late March. Boxer had no prior knowledge of Finizie, nor any animus towards her. Furthermore, as demonstrated above, the AIB was not targeted against Finizie (or Kocher), but the QM department overall.

### C.    The VA's decisions to order the AIB and respond to its conclusions with an Action Plan are valid non-retaliatory business decisions.

The Philadelphia VA Director, who ultimately established the AIB here, had valid reasons for doing so. The QM Department indisputably had many unhappy employees by the fall of 2016. SAppx081-082, (LaPointe

35

AIB Dep. Tr. at 21-22). For example, Simon fought with Kocher; Finizie and Kocher had issues with Leporati; and other tensions had spilled into the workplace. The VA had counseled Kocher, Finizie, and Leporati about their behavior during the Fall 2016. And then-director Hendee directed the AIB Board to investigate: (1) Unprofessional Behavior; (2) Hostile Work Environment; and (3) Threatening Behavior and Comments. A100, (Charge Letter). Far from targeting Finizie (and Kocher), the charge sheet was designed to address their concerns, particularly with respect to their allegations that Leporati tried to intimidate them as witnesses to an October 2016 tense argument between Kocher and Pattie Simon. *Id.* An AIB offers management a chance to have outside evaluators review problematic situations so that leadership can be more effective.

Under all the circumstances, having an AIB investigate a variety of problems in the QM Department was a reasonable business decision that was not commenced to retaliate against Finizie.

Furthermore, the only actual consequence to Finizie was an office move. But again, relocating an employee's workstation is not, by itself, a materially adverse employment action. *See, e.g.*, *Shaner*, 204 F.3d at 506 & n.16; *Fercello*, 612 F.3d at 1079; *Nettle*, 334 F.App'x at 926; *McCullough*,

212 F.App'x at 285. And while an office move was inconvenient to Finizie, this small adjustment followed the AIB's action plan as a reasonable step to improve office morale. Finizie herself admits that Boxer was only carrying out the AIB's recommendations. SAppx011-012, (Finizie Dep. Tr. at 60:30-61:7).

Because Finizie cannot rebut the VA's legitimate non-retaliatory reason for ordering the AIB and moving Finizie's office, the district court properly granted summary judgment.

## CONCLUSION

Finizie fails to establish evidence that the VA discriminated or retaliated against her. Therefore, this Court should affirm the order and judgment of the district court.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Gregory B. David/MJS*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Colin M. Cherico*
COLIN M. CHERICO
Assistant United States Attorney
615 Chestnut St., Suite 1250
Philadelphia, PA 19106
colin.cherico@usdoj.gov
(215) 861-8788

Dated: December 20, 2023

## CERTIFICATIONS

1.      I certify that this brief contains 6659 words, exclusive of the table of contents, table of authorities, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B), and was prepared in Microsoft Word 2016 using 14-point Georgia font, a proportionally spaced typeface, and therefore complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6).

2.      I certify that the electronic version of this brief filed with the Court was automatically scanned by Trellix Endpoint Security, version 10.7.0.5162, and found to contain no known viruses.

3.      I certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.


/s/ Colin M. Cherico
COLIN M. CHERICO
Assistant United States Attorney

# CERTIFICATE OF SERVICE

I certify that on this date this brief was filed and served through the

Court's Electronic Case Filing (ECF) system, including on the following:

Faye Riva Cohen, Esquire
Law Office of Faye Riva Cohen, P.C.
2047 Locust Street
Philadelphia, PA 19103

/s/ Colin M. Cherico
COLIN M. CHERICO
Assistant United States Attorney

Dated: December 20, 2023